CUYAHOGA COUNTY BOARD OF COMMISSIONERS, APPELLEE,
*v.* THE STATE OF OHIO ET AL., APPELLANTS.

[Cite as *Cuyahoga Cty. Bd. of Commrs. v. State,*
112 Ohio St.3d 59, 2006-Ohio-6499.]

(No. 2005–1438—Submitted May 24, 2006—Decided December 27, 2006.)

LANZINGER, J.

{¶ 1} We accepted this discretionary appeal to determine whether a board of county commissioners has standing to challenge a law permitting the transfer of federal welfare grant money to the state's General Revenue Fund and, if so, whether the law was valid.

{¶ 2} In 1996, Congress revamped the federal welfare program with enactment of the Personal Responsibility and Work Opportunity Reconciliation Act. Pub.L. No. 104–193, 110 Stat. 2105. Aid to Families with Dependent Children was replaced with Temporary Assistance to Needy Families ("TANF"), which provided block grants to participating states. The purpose of TANF is "to increase the flexibility of States in operating a program designed to—

{¶ 3} "(1) provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives;

{¶ 4} "(2) end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage;

{¶ 5} "(3) prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and

{¶ 6} "(4) encourage the formation and maintenance of two-parent families." Section 601(A), Title 42, U.S.Code.

{¶ 7} The federal government also provides block grants to the states for social services known as Title XX. See Section 1397 et seq., Title 42, U.S.Code. These funds are to be used "to furnish services directed at the goals of—

{¶ 8} "(1) achieving or maintaining economic self-support to prevent, reduce, or eliminate dependency;

{¶ 9} "(2) achieving or maintaining self-sufficiency, including reduction or prevention of dependency;

{¶ 10} "(3) preventing or remedying neglect, abuse, or exploitation of children and adults unable to protect their own interests, or preserving, rehabilitating or reuniting families;

{¶ 11} "(4) preventing or reducing inappropriate institutional care by providing for community-based care, home-based care, or other forms of less intensive care; and

{¶ 12} "(5) securing referral or admission for institutional care when other forms of care are not appropriate, or providing services to individuals in institutions." Section 1397, Title 42, U.S.Code.

{¶ 13} A state wishing to participate in the federal welfare program must submit a plan to the federal government detailing the programs it intends to implement to meet the goals of TANF. Section 602, Title 42, U.S.Code. A state that receives a TANF block grant may transfer a portion of its grant to implement programs under Title XX, as long as the funds are used "only for programs and services to children or their families whose income is less than 200 percent of the income official poverty line." Section 604(d), Title 42, U.S.Code.

{¶ 14} In 1997, Ohio enacted Sub.H.B. No. 408, 147 Ohio Laws, Part II, 3381 ("H.B. 408"), which created two programs—Ohio Works First, R.C. Chapter 5107, and Prevention, Retention, and Contingency, R.C. Chapter 5108—to comply with the TANF regulations. The Ohio Department of Job and Family Services ("ODJFS") is charged with administration and supervision of the TANF programs, R.C. 5101.80, and is authorized to enter into agreements with the boards of county commissioners to implement these programs, R.C. 5101.21. The state directly provides some TANF and Title XX services, such as cash assistance. It

also allocates funds to the county departments of job and family services to administer TANF and Title XX programs.

{¶ 15} Ohio received approximately $728 million in TANF block grants annually from 1997 through 2001. Each year, the state elected to transfer ten percent of its TANF funds, approximately $72.8 million, to its Title XX account. Former R.C. 5101.46(H) delineated how these funds could be used:

{¶ 16} "If federal funds received by the department of job and family services for use under Chapters 5107. and 5108. of the Revised Code are transferred by the controlling board for use in providing social services under this section, the distribution and use of the funds are not subject to the provisions of division (C) of this section. The department may do one or both of the following with the funds:

{¶ 17} "(1) Distribute the funds to the county departments of job and family services;

{¶ 18} "(2) Use the funds for services that benefit individuals eligible for services consistent with the principles of Title IV–A of the 'Social Security Act,' 49 Stat. 620 (1935), 42 U.S.C.A. 301, as amended." Am.Sub.H.B. No. 283, 148 Ohio Laws, Part II, 2339, 2873.

{¶ 19} In the biennial budget for state fiscal years 2002 and 2003, the state again provided for a transfer of ten percent of TANF funds to Title XX. Section 63.09, Am.Sub.H.B. No. 94, 149 Ohio Laws, Part III, 4126, 5533 ("H.B. 94"),[1] and Section 1397a(d), Title 42, U.S.Code. Of the TANF funds transferred to Title XX, however, $60 million was required to be placed into a special revenue fund and held until it was determined how much of it would be needed to balance the General Revenue Fund ("GRF"). Id. Once the amount was determined, it was to be transferred into the GRF. Id. Any remaining funds were to be returned to the TANF account. Id. The director of ODJFS's fiscal office ordered the transfer of $60 million into Fund 5Q8 on July 13, 2001, and on May 10, 2002, the

---

1. Section 63.09 of H.B. 94 provides, "The Department of Job and Family Services shall in each fiscal year of the biennium transfer the maximum amount of funds from the federal TANF Block Grant to the federal Social Services Block Grant as permitted under federal law. Not later than July 15, 2001, the Department of Job and Family Services shall draw $ 60,000,000 in receipts from TANF funds that were transferred into the Social Services Block Grant into State Special Revenue Fund 5Q8, in the Office of Budget and Management. Not later than June 1, 2002, the Director of Budget and Management shall determine the amount of funds in State Special Revenue Fund 5Q8 that is needed for the purpose of balancing the General Revenue Fund, and may transfer that amount to the General Revenue Fund. Not later than June 1, 2003, the Director of Budget and Management shall determine the amount of funds in State Special Revenue Fund 5Q8 that is needed for the purpose of balancing the General Revenue Fund, and may transfer that amount to the General Revenue Fund. Any moneys remaining in State Special Revenue Fund 5Q8 on June 15, 2003, shall be transferred not later than June 20, 2003, to Fund 3V6, TANF Block Grant, in the Department of Job and Family Services."

director of the Office of Budget and Management shifted that money into the GRF.

{¶ 20} On September 19, 2001, appellee, the Cuyahoga Board of County Commissioners ("the county"), filed a complaint in the Cuyahoga County Common Pleas Court against appellants, the state of Ohio, the ODJFS, the Governor of Ohio, the director of ODJFS, and the director of the Office of Budget and Management, alleging that the use of TANF funds to balance the state budget violated former R.C. 5101.46(H).[2] It requested a declaratory judgment and a permanent injunction to enjoin the allocation of TANF funds for non-TANF purposes, including but not limited to balancing the GRF. After a bench trial, the common pleas court entered judgment in favor of the county, declared the May 10, 2002 transfer null and void, and ordered that the $60 million that was transferred be returned to the state's Title XX account.

{¶ 21} Appellants appealed to the Eighth District Court of Appeals and argued that the county lacked standing to bring the suit, that the trial court erred in holding that H.B. 94 violated the Ohio Constitution, and that the transfer was meant to reimburse the state for prior Title XX expenses and therefore was not subject to the limitations of former R.C. 5101.46(H). The state also contended that the trial court violated the separation-of-powers doctrine by ordering an "appropriation," which is exclusively a legislative function. The court of appeals rejected each of these arguments and affirmed the trial court judgment. This cause is before this court on a discretionary appeal.

{¶ 22} A preliminary inquiry in all legal claims is the issue of standing. "The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented." *Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088. In Ohio, it is well established that standing to attack the constitutionality of a legislative enactment exists only where a litigant "has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 469–470, 715 N.E.2d 1062.

{¶ 23} "Whether established facts confer standing to assert a claim is a matter of law." *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, at ¶ 90. We review questions of law de novo. Id., citing

---

2. The county also alleged that the state had breached the partnership agreement with the county and had breached its fiduciary duty by misallocating TANF funds. The trial court granted the state a directed verdict on these claims, and they are not at issue in this case.

*Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.,* 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4.

{¶ 24} The state argues that the county lacks standing to challenge the law allowing the transfer of the TANF funds because the county cannot show that it is entitled to any of the money. The state further contends that the county was not deprived of a single welfare dollar. The county contends that there would be some benefit to the county or its residents if the $60 million were placed back into the Title XX account.

{¶ 25} We agree that the county has not shown that it has suffered a direct and concrete injury. There is no evidence that the county's base allocations of TANF and Title XX funds were reduced as a result of the transfer of the funds into special revenue fund 5Q8. The county's base allocation of TANF funds and Title XX funds remained relatively stable from 1998 to 2003. The discretionary portion above the base allocations was reduced, and it is that reduction that hurt the county's welfare programs.[3] Although the county hoped that the state would cover the county's expenditures over its base allocations, the state was under no duty to provide such funds. To the contrary, Section 63.15 of H.B. 94 establishes that the single allocation from certain block grants such as TANF and Title XX is the "maximum amount the county department shall receive from those appropriation items." 149 Ohio Laws, Part III, 4126, 5539.

{¶ 26} The court of appeals held that the county had standing. In *Wilmington City School Dist. Bd. of Edn. v. Clinton Cty. Bd. of Commrs.* (2000), 141 Ohio App.3d 232, 750 N.E.2d 1141, the board of education had filed a declaratory-judgment action to invalidate tax exemptions that had been granted to two companies, due to the appellees' failure to give the board of education notice of the filing of the applications for tax exemption. According to the version of R.C. 5709.83 in effect at the time, before formal action to "adopt or enter into any instrument granting a tax exemption," the legislative authority of the political subdivision was required to give notice to the affected local school district and was also required to consider any comment by the board of education of that district. 144 Ohio Laws, Part II, 2642, 2659. The *Wilmington* court held that because R.C. 5709.83 imposed a duty on the appellees, the board of education had standing to challenge the tax exemptions.

{¶ 27} Unlike the mandatory provision of R.C. 5709.83, former R.C. 5101.46(H) was discretionary. Former R.C. 5101.46(H) stated that the ODJFS *may* distribute the transferred TANF funds to the county departments of job and family services, or *may* use the funds directly for Title XX services. Of course, if

---

3. This reduction was challenged in count one of the complaint, the count on which the trial court granted a directed verdict to the state.

neither option was selected, the funds could have been held in reserve. The court of appeals relied on R.C. 5101.46(C) to show that the county would have received a substantial portion of the $60 million based on the allocation formulae. Former R.C. 5101.46(H), however, specifically stated that these "funds are not subject to the provisions of division (C) of this section."

{¶ 28} In a case involving TANF advancements rather than reimbursements, the County of Westchester sued the commissioner of the New York State Office of Temporary and Disability Assistance challenging the agency's reduction of TANF advances and requesting an injunction preventing any future reduction. *In re Spano v. Wing* (2001), 728 N.Y.S.2d 809, 285 A.D.2d 809. The trial court granted the respondent's motion to dismiss, holding that the claims were not ripe. New York law authorized the agency to make advance TANF payments to counties but did not require it. The appellate court affirmed the dismissal, holding that, in addition to the claims not being ripe, the petitioners had failed to state a cause of action because they sought to mandate the respondent's performance of wholly discretionary acts.

{¶ 29} Because distribution of the TANF funds in question was discretionary, the county has not shown that it has a concrete right to any part of those funds. We, therefore, hold that the county lacks standing. As a result of this determination, we will not address the state's remaining propositions of law. The portion of the Cuyahoga County Court of Appeals judgment holding that the county had standing is reversed, and the remainder of the judgment is vacated.

Judgment reversed in part<br>and vacated in part.

MOYER, C.J., RESNICK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

PFEIFER and O'DONNELL, JJ., concur in judgment only.

---

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, and Henry G. Appel, Assistant Solicitor, for appellants.