[Cite as *State ex rel. Ullmann v. Husted*, 2015-Ohio-3120.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Victoria E. Ullmann, | : | |
| Relator, | : | |
| v. | : | No. 14AP-863 |
| Jon Husted, Secretary of State of Ohio, et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on August 4, 2015

*Victoria E. Ullmann,* pro se.

*Michael DeWine*, Attorney General, *Ryan L. Richardson* and *Tiffany L. Carwile,* for the State Office respondents.

*Organ Cole LLP* and *Douglas R. Cole, Squire Patton Boggs LLP* and *Aneca E. Lasley,* for the JobsOhio respondents.

ON OBJECTIONS TO THE MAGISTRATE'S DECISION

HORTON, J.

{¶ 1} Relator, Victoria E. Ullmann, commenced this original action in mandamus seeking an order declaring R.C. 187.01 et seq. and R.C. 4313.01 et seq., the JobsOhio Act, unconstitutional in its entirety and void ab initio, and compelling respondents Jon Husted, secretary of State of Ohio, Michael DeWine, attorney general of the State of Ohio, John Kasich, governor of the State of Ohio (collectively the "state respondents"), JobsOhio, John Minor, president and CEO of JobsOhio, and the JobsOhio Beverage System (collectively the "JobsOhio respondents") to cancel JobsOhio's corporate

documents, to dissolve JobsOhio and the JobsOhio Beverage System, to transfer all property belonging to the state back to its possession, to audit all the assets of JobsOhio and JobsOhio Beverage System, and to order Michael DeWine to appoint relator as special counsel in order to pay her attorney fees or alternatively, to appoint her as special counsel to proceed against JobsOhio in quo warranto.

{¶ 2}   Under Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate, who issued a decision, which is appended hereto.

{¶ 3}   As discussed in the magistrate's decision, the respondents  filed motions to dismiss challenging subject-matter jurisdiction, standing, and failure to state a claim under Civ.R. 12(B)(1) and (6).  Respondents argued that the complaint in mandamus was merely a disguised action for a declaratory judgment that the JobsOhio statutes are unconstitutional and a request for a prohibitory injunction barring the respondents from continuing to apply the JobsOhio statutes as if they were good law.  Respondents also argued that relator lacked standing to bring this action, both under the doctrine of public right standing and under traditional personal standing.

{¶ 4}   The magistrate determined that "it is clear beyond doubt" that relator lacked standing, and therefore found the jurisdictional issue to be moot.  He then recommended that this court grant the respondents' motions to dismiss.

{¶ 5}   Relator has filed objections to the magistrate's decision.

{¶ 6}   Relator objects to the magistrate's decision to base dismissal on lack of standing rather than first addressing the subject-matter jurisdiction of this court over the action in mandamus.

{¶ 7}   The standard of review for a dismissal, pursuant to Civ.R. 12(B)(1), is whether any cause of action cognizable by the forum has been raised in the complaint. *State ex rel. Bush v. Spurlock,* 42 Ohio St.3d 77, 80 (1989).  In reviewing a motion to dismiss a mandamus action for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the relator can prove no set of facts warranting the requested writ.  *State ex rel. Russell v. Thornton,* 111 Ohio St.3d 409, 2006-Ohio-5858, ¶ 9.  We must consider and accept all factual allegations in the complaint as true and afford all reasonable inferences in the nonmoving party's favor.  *Id.*

{¶ 8} Here, relator alleges the JobsOhio statutes are manifestly unconstitutional and requests this court to so conclude and declare the statutes unconstitutional in their entirety and void ab initio. (Amended Complaint, ¶ 2, 50.) Assuming for purposes of deciding the motion to dismiss, that this allegation is true, she requests this court to order the respondents to discontinue JobsOhio's existence as a state created and state certified corporation. (Amended Complaint, ¶ 5, 50.)

{¶ 9} If the allegations of the complaint in mandamus indicate the real object sought is a declaratory judgment, the complaint does not state a viable claim in mandamus and must be dismissed for lack of jurisdiction. *State ex rel. JobsOhio v. Goodman*, 133 Ohio St.3d 297, 2012-Ohio-4425, ¶ 14.

{¶ 10} However, if a declaratory judgment would not be a complete remedy unless coupled with extraordinary ancillary relief in the nature of a mandatory injunction, the availability of declaratory judgment does not preclude a writ of mandamus. *State ex rel. Ohio Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, ¶ 25. In *Brunner*, members of the Ohio General Assembly brought an action in mandamus to compel the newly elected secretary of state to treat a bill as a duly enacted law even though the bill had not been signed by the previous governor before he left office, and the newly elected governor had attempted to veto the bill. The Supreme Court of Ohio ruled in a declaratory judgment that the bill was a valid law and would not be a complete remedy without a mandatory injunction compelling the secretary of state to treat the particular bill as a duly enacted law. *Id.*

{¶ 11} The magistrate cited the syllabus in *State ex rel. Fenske v. McGovern*, 11 Ohio St.3d 129 (1984), for the same proposition that the extraordinary remedy of a mandatory injunction is not a plain and adequate remedy in the ordinary course of law precluding exercise of the original jurisdiction in mandamus conferred upon a court of appeals by the Ohio Constitution, Article IV, Section 3.

{¶ 12} Accepting all factual allegations in the complaint as true and affording all reasonable inferences in relator's favor, a declaratory judgment that the JobsOhio statutes are unconstitutional would not be complete without a mandatory injunction ordering the state respondents to take affirmative action to dissolve a corporation created in violation of the Ohio Constitution. Because relator's mandamus action seeks a specific order

directing state actors to perform certain legal duties, this court has subject-matter jurisdiction. Therefore, we conclude that relator has brought a claim in mandamus and not a disguised motion for declaratory judgment. Since this court has original jurisdiction over actions in mandamus, we shall proceed to review the objections to the magistrate's determination that relator lacks standing.

{¶ 13} Relator contends that she has both personal standing and public interest standing to require the attorney general to proceed in quo warranto against JobsOhio as an illegal corporation. She claims that she has standing because the assistant attorneys general have received hundreds of pages of documents signed by her in previous litigation that state that JobsOhio and the JobsOhio Beverage System are void. She further claims that she has standing "by virtue of asking" for the attorney general to proceed in quo warranto.

{¶ 14} "Standing is a preliminary inquiry that must be made before a court may consider the merits of a legal claim." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, ¶ 9. Standing is a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court – even a court of competent subject-mater jurisdiction – over a party's attempted action. *Bank of America, N.A., v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 22.

{¶ 15} Relator contends the magistrate misinterpreted *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 10-12, because the Supreme Court of Ohio's statement that the constitutionality of the JobsOhio legislation did not rise to the rare and extraordinary level required for public right standing was merely dicta. We disagree.

{¶ 16} At an earlier stage in the proceedings, the appellants had argued the matter was one of great public interest and importance because of media attention to the privatization of governmental functions, the historic importance of issues of public debt and the relationship of corporations to public expenditures, and the alleged lack of accountability and commingling of public and private funds. *ProgressOhio.org, Inc. v. JobsOhio,* 10th Dist. No. 11AP-1136, 2012-Ohio-2655, ¶ 30. A panel of this court concluded that these concerns were not enough to confer public interest standing on the appellants. *Id.* at ¶ 31. A majority of the Supreme Court of Ohio agreed, stating that

appellants made little effort to present a rare and extraordinary public issue other than to assert that citizens should be able to challenge alleged constitutional violations. *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 12.

{¶ 17} Relator has not alleged anything in this new action different from the earlier action to show that she has standing under the public right doctrine.

{¶ 18} Following an independent review of this matter, we find that relator has brought an action in mandamus and that this court has subject-matter jurisdiction over the action. We further find that the magistrate has appropriately determined that relator lacks standing to pursue this action. Therefore, with the additional determination that this court has subject-matter jurisdiction over relator's action in mandamus, we adopt the magistrate's decision as our own, and dismiss the complaint in mandamus. Any pending motions such as relator's March 25, 2015 motion for partial summary judgment, are rendered as moot.

*Writ of mandamus dismissed; motion for partial summary judgment rendered moot.*

BROWN, P.J. and KLATT, J., concur.

————————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Victoria E. Ullmann, | : | |
| Relator, | : | |
| v. | : | No. 14AP-863 |
| Jon Husted, Secretary of State of Ohio, et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on February 12, 2015

*Victoria E. Ullmann,* pro se.

*Michael DeWine*, Attorney General, *Ryan L. Richardson* and *Tiffany L. Carwile,* for the State Office respondents.

*Organ Cole LLP* and *Douglas R. Cole, Squire Patton Boggs LLP* and *Aneca E. Lasley,* for the JobsOhio respondents.

### IN MANDAMUS
### ON RESPONDENTS' MOTIONS TO DISMISS

{¶ 19} In this original action, relator, Victoria E. Ullmann, requests a writ of mandamus declaring null and void R.C. 187.01 et seq. and R.C. 4313.01 et seq. ("the JobsOhio statutes") on grounds that the statutes contravene the Ohio Constitution, Article XIII, Sections 1 and 2. Relator also requests that the writ order respondents, Secretary of State Jon Husted ("Husted"), Ohio Attorney General Michael DeWine ("DeWine"),

Auditor of State David Yost ("Yost"), and Governor John Kasich ("Kasich") (collectively, "the state office respondents") to each take affirmative action to dissolve JobsOhio and the JobsOhio Beverage System. According to relator's amended complaint, respondents JobsOhio, JobsOhio Beverage System, and John Minor (collectively, "the JobsOhio respondents") are added as "necessary parties."

### The JobsOhio Statutes and the Ohio Constitution

{¶ 20} In February 2011, the General Assembly initially enacted R.C. 187.01 et seq. R.C. 187.01 provides:

> The governor is hereby authorized to form a nonprofit corporation, to be named "JobsOhio," with the purposes of promoting economic development, job creation, job retention, job training, and the recruitment of business to this state. Except as otherwise provided in this chapter, the corporation shall be organized and operated in accordance with Chapter 1702. of the Revised Code. The governor shall sign and file articles of incorporation for the corporation with the secretary of state.

{¶ 21} R.C. 187.03(A) provides:

> JobsOhio may perform such functions as permitted and shall perform such duties as prescribed by law and as set forth in any contract entered into under section 187.04 of the Revised Code, but shall not be considered a state or public department, agency, office, body, institution, or instrumentality for purposes of section 1.60 or Chapter 102., 121., 125., or 149. of the Revised Code.

{¶ 22} In September 2011, the General Assembly enacted R.C. 4313.01 et seq.

{¶ 23} R.C. 4313.01 provides the following definitions:

> (A) "Enterprise acquisition project" means, as applicable, all or any portion of the capital or other assets of the spirituous liquor distribution and merchandising operations of the division of liquor control * * *

> (E) "Transfer agreement" means the agreement entered into between the state and JobsOhio providing for the transfer of the enterprise acquisition project pursuant to section 4313.02 of the Revised Code and any amendments or supplements thereto.

{¶ 24} R.C. 4313.02 provides:

(A) The state may transfer to JobsOhio, and JobsOhio may accept the transfer of, all or a portion of the enterprise acquisition project for a transfer price payable by JobsOhio to the state.

{¶ 25} Ohio Constitution, Article XIII, Section 1 provides:

The general assembly shall pass no special act conferring corporate powers.

{¶ 26} Ohio Constitution, Article XIII, Section 2 provides:

Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed.

## Related Litigation

{¶ 27} In *ProgressOhio.org, Inc. v. JobsOhio,* 139 Ohio St.3d 520, 2014-Ohio-2382, the Supreme Court of Ohio determined that the appellants did not have traditional standing or public-right doctrine standing to bring the action they had filed in the Franklin County Court of Common Pleas ("common pleas court" or "trial court") seeking declaratory and injunctive relief.

{¶ 28} In the common pleas court action, the plaintiffs were ProgressOhio.org, Inc. ("ProgressOhio"), Michael J. Skindell, a member of the Ohio Senate, and Dennis E. Murray, Jr., a former member of the Ohio House of Representatives. In the *ProgessOhio* case, the Supreme Court of Ohio states that ProgressOhio is an entity organized under 26 U.S.C. 501(c)(4) and that "[i]t was 'created to provide a progressive voice for Ohio citizens[,] * * * to inform and educate the public about progressive ideals, values and politics [and] to ensure that the government follows the dictates of the U.S. and Ohio Constitutions.' " *Id.* at ¶ 3.

{¶ 29} In the common pleas court action, plaintiffs, ProgressOhio, Skindell, and Murray, sought declaratory and injunctive relief challenging the constitutionality of the JobsOhio statutes, much like the constitutional challenge being put forth here. The trial court dismissed the case finding that the plaintiffs lacked standing to sue. On appeal here, this court agreed. *ProgressOhio.org, Inc. v. JobsOhio,* 10th Dist. No. 11AP-1136, 2012-

Ohio-2655. Thereafter, the Supreme Court of Ohio took a discretionary appeal and affirmed the judgment of this court. In *ProgressOhio*, the Supreme Court had occasion to succinctly summarize the law of traditional standing and the law of standing under the public-right doctrine set forth in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451 (1999). The court explained why the plaintiffs lacked standing to sue:

> "Before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal,* 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27. Traditional standing principles require litigants to show, at a minimum, that they have suffered "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Moore v. Middletown,* 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22. Standing does not depend on the merits of the plaintiff's claim. *Id.* at ¶ 23. Rather, standing depends on whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case. *Clifton v. Blanchester,* 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15; *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas,* 35 Ohio St.2d 176, 178–179, 298 N.E.2d 515 (1973).
>
> Appellants concede that they have no personal stake in the outcome of this litigation. Consequently, they are admittedly unable to meet the requirements to establish traditional standing. * * *
>
> I. *The Public–Right Doctrine*
>
> First, appellants claim that they have standing under the public-right doctrine outlined in *Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062. The public-right doctrine represents "an exception to the personal-injury requirement of standing." *Id.* at 503, 715 N.E.2d 1062. The doctrine provides that "when the issues sought to be litigated are of great importance and interest to the public, they may be resolved in a form of action that involves no rights or obligations peculiar to named parties." *Id.* at 471, 715 N.E.2d 1062. To succeed in bringing a public-right case, a litigant must allege "rare and extraordinary" issues that threaten serious public

injury. (Emphasis deleted.) *Id.* at 504, 715 N.E.2d 1062. Not all allegedly illegal or unconstitutional government actions rise to this level of importance. *Id.* at 503, 715 N.E.2d 1062.

Appellants do not have standing under the public-right doctrine. As *Sheward* makes clear, the public-right doctrine applies only to original actions in mandamus and/or prohibition. *Id.* at paragraph one of the syllabus ("Where the object of *an action in mandamus and/or prohibition* is to procure the enforcement or protection of a public right, the relator need not show any legal or special individual interest in the result * * * " [emphasis added] ). It does not apply to declaratory-judgment actions filed in common pleas courts, and we have never used the doctrine in such a case.

Nor could we. The Ohio Constitution expressly requires standing for cases filed in common pleas courts. Article IV, Section 4(B) provides that the courts of common pleas "shall have such original jurisdiction over all *justiciable matters.*" (Emphasis added.) A matter is justiciable only if the complaining party has standing to sue. *Fed. Home Loan Mtge. Corp. v. Schwartzwald,* 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 41 ("It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy"). Indeed, for a cause to be justiciable, it must present issues that have a "direct and immediate" impact on the plaintiffs. *Burger Brewing Co. v. Liquor Control Comm., Dept. of Liquor Control,* 34 Ohio St.2d 93, 97–98, 296 N.E.2d 261 (1973). Thus, if a common pleas court proceeds in an action in which the plaintiff lacks standing, the court violates Article IV of the Ohio Constitution. Article IV requires justiciability, and justiciability requires standing. These constitutional requirements cannot be bent to accommodate *Sheward.*

Even assuming that *Sheward* could apply to common-pleas actions, it would not apply in this case. Appellants make little effort to present a rare and extraordinary public issue. Instead, they assert that citizens should be able to challenge any alleged constitutional violations, regardless of rarity or magnitude. Appellants' position is incompatible with *Sheward,* which clearly states that not all allegations of constitutional harm warrant an exception to the personal-stake requirement of standing. 86 Ohio St.3d at 503, 715 N.E.2d 1062; *see also State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d

> 990, quoting *Sheward* at 504, 715 N.E.2d 1062
> (constitutional challenge to state spending measures was
> "not a 'rare and extraordinary case' warranting invocation of
> the public-right exception to the personal-stake requirement
> of standing"). Thus, another reason that appellants' *Sheward*
> argument fails is that they do not show the type of rare and
> extraordinary public-interest issue required by *Sheward*.
> Accordingly, we find that appellants cannot establish
> standing under the public-right doctrine.

*ProgressOhio* at ¶ 7-12.

### The Amended Complaint

{¶ 30} Relator begins her amended complaint by alleging that the JobsOhio statutes contravene Ohio Constitution, Article XIII, Sections 1 and 2. If this court were to determine that the JobsOhio statutes are unconstitutional, allegedly, certain duties would then befall each of the state office respondents. Under that scenario, Husted would have "the duty to invalidate JobsOhio's incorporation as *void ab initio* * * *." (Emphasis sic.) (Amended Complaint, 9.)

{¶ 31} Under that scenario, allegedly, Kasich would have "the duty to accept and reallocate [JobsOhio] assets to the Department of Commerce, the Development Services Agency or other appropriate state department." (Amended Complaint, 10-11.)

{¶ 32} Under that scenario, allegedly, DeWine would have "a duty to institute an equitable action in some form which is appropriate to dissolve the entity." (Amended Complaint, 11.)

{¶ 33} Allegedly, DeWine would have the duty to appoint "independent special counsel to determine whether a *quo warranto* or other action should be filed against JobsOhio and the JobsOhio Beverage System and to prosecute that action." (Amended Complaint, 12.) Relator suggests that she should be appointed special counsel by DeWine because "[s]he has more experience relevant to this situation than anyone in the state." (Amended Complaint, 12.)

{¶ 34} Allegedly, Yost would have the duty to audit JobsOhio.

{¶ 35} Based on the alleged duties that would befall each of the state office respondents, relator demands that Husted be ordered to cancel the JobsOhio articles of incorporation. Relator demands that Kasich be ordered "to undertake all actions that are

necessary and proper to dissolve JobsOhio and the JobsOhio Beverage System as a [sic] corporate entities in Ohio and to transfer all property belonging to the state back to its possession." (Amended Complaint, 13-14.)

{¶ 36} Relator demands that Yost be ordered to audit JobsOhio.

{¶ 37} With respect to DeWine, relator demands that this court order him "to appoint her retroactively as special counsel in order to pay her attorney fees for this action including the research necessary to prepare this filing." (Amended Complaint, 14.)

{¶ 38} In apparent anticipation of the issue before this court, relator's amended complaint devotes much time to standing:

> [Sixteen] Relator has standing as a citizen, taxpayer, business owner, business consultant, and elector of the state of Ohio. * * *
>
> [Eighteen] Further, as an elector, relator has standing to challenge JobsOhio because its existence so violates the Ohio Constitution that it constitutes a defacto repeal of Ohio Const. 13.01 and 13.02. The electors of Ohio are entitled to vote on any change in the Constitution and relator has been denied that right. * * *
>
> [Nineteen] JobsOhio and the JobsOhio Beverage System are funded by the profits of the state of Ohio's wholesale liquor business and any citizen who purchases spirituous liquor in the state is forced to support JobsOhio or travel out of state to make the purchase. Relator has purchased spirituous liquor at a state operated liquor store in the past 30 days and has therefore paid into the fund that supports JobsOhio. * * *
>
> [Twenty] Relator also has a personal stake in this litigation because she is working with a new international publishing company called Frost Publishing. She is development and submissions director for Frost Media Group, an affiliate of Frost Publishing. This is a currently unincorporated group of companies, headquartered in Canada, but with contractors and one owner in Ohio. Canada has economic development assistance for new companies.
>
> [Twenty-one] Part of her role is to determine whether it is beneficial to the company to incorporate the media group in Ohio. Ullmann has an interest in ensuring that if the company locates any affiliate in Ohio that all corporations

and other business entities are governed according to law and treated equally under the law in accordance with Ohio Con. 13.01 and 13.02.

[Twenty-two] This concern also carries over into her law practice where she from time to time represents small businesses and her solo practice is also an Ohio business. She also owns the domain name statehousewatch.org but has been reluctant to incorporate it as a nonprofit public interest entity since nonprofit entities are treated arbitrarily in the state.

[Twenty-three] Ullmann, along with Dennis Murray and Michael Skindell, have a vested interest [in] this action as an [sic] attorneys that worked most diligently and pro bono, since 2011 to obtain a determination of JobsOhio's constitutionality. They have been forced into this position since Attorney General Michael DeWine has failed to appoint special counsel to determine whether the attorney general's office has the duty to file an action in *quo warranto* or some other action to dissolve JobsOhio or the JobsOhio Beverage System.

[Twenty-four] Attorneys for JobsOhio/JobsOhio Beverage System and for the state of Ohio have done everything they possibly can to prevent this determination to allow a void entity to continue to operate. They have all been paid from the public coffers to do so.

[Twenty-five] Relator has standing as she is requesting that the court order the attorney general appoint her as special counsel to determine how to judicially dissolve JobsOhio.

(Emphasis sic.) (Amended Complaint, 5-7.)

### Procedural History

{¶ 39} On December 22, 2014, relator moved to amend her complaint. Her motion was granted by the magistrate.

{¶ 40} On January 5, 2015, the JobsOhio respondents moved for dismissal of the amended complaint.

{¶ 41} On January 6, 2015, the state office respondents filed a document that the magistrate shall treat as a motion to dismiss the amended complaint.

{¶ 42} On January 23, 2015, relator filed her memorandum contra the motions to dismiss her amended complaint. Earlier, on December 12, 2014, relator filed a memorandum contra the motions to dismiss regarding her initial complaint.

{¶ 43} On February 2, 2015, the JobsOhio respondents and the state office respondents each filed a reply in support of their motions to dismiss the amended complaint.

{¶ 44} Thus, respondents' motions to dismiss the amended complaint are now before the magistrate for his written determination.

### Analysis

{¶ 45} It is clear beyond doubt that relator does not have standing to bring this action irrespective of whether this court has jurisdiction over her complaint.

### Public-right Standing

{¶ 46} In the *ProgressOhio* case, as earlier noted, the Supreme Court of Ohio succinctly set forth the law regarding the public-right doctrine. It held, in a case dramatically similar to this one, that the *ProgressOhio* plaintiffs did not have standing under the public-right doctrine as set forth in *Sheward*.

{¶ 47} While relator was not a plaintiff in the *ProgressOhio* case, the decision of the Supreme Court on the public-right standing issue is compelling here. In fact, relator makes no real effort to distinguish the instant case from the *ProgressOhio* case as to the public-right standing issue. Accordingly, the magistrate is compelled to conclude that relator does not have public-right standing in the instant case.

### Traditional Standing

{¶ 48} In her amended complaint, relator alleges, as earlier noted, that she "has standing as a citizen, taxpayer, business owner, business consultant, and elector of the state of Ohio. She further has standing as an individual who has purchased spirits from an Ohio State Liquor Store * * *." (Amended Complaint, 5.)

{¶ 49} In *Cuyahoga Cty. Bd. of Comm. v. State,* 112 Ohio St.3d 59, 2006-Ohio-6499, quoting from *Sheward* the Supreme Court of Ohio states:

> In Ohio, it is well established that standing to attack the constitutionality of a legislative enactment exists only where a litigant "has suffered or is threatened with direct and concrete injury in a manner or degree different from that

suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury."

*Cuyahoga Cty.* at ¶ 22.

{¶ 50} Moreover, to establish standing, the plaintiff may not rely upon an " 'abstract or suspected' claim rather than an 'actual' or 'concrete' one." *State ex rel. Am. Subcontractors Assn., Inc. v. Ohio State Univ.,* 129 Ohio St.3d 111, 2011-Ohio-2881, ¶ 16. *See also State ex rel. Walgate v. Kasich,* 10th Dist. No. 12AP-548, 2013-Ohio-946.

{¶ 51} In the *Walgate* case, this court states:

> To the extent the complaint can be interpreted as an allegation that increasing the availability of gambling in Ohio *may* cause them injury, such injury is purely speculative and hypothetical and, thus, does not constitute actual or concrete injury to justify a finding of standing. *Wurdlow v. Turvy,* 2012-Ohio-4378, 977 N.E.2d 708, ¶ 15, citing [*Tiemann v. Univ. of Cincinnati,* 127 Ohio App.3d 312, 325, 712 N.E.2d 1258 (10th Dist.1998)] (a bare allegation that a plaintiff fears some injury will or may occur is insufficient to confer standing).

(Emphasis sic.) *Id.* at ¶ 16.

{¶ 52} According to relator, she has been denied her right to vote on changes to the Ohio Constitution. This is so because, allegedly, JobsOhio's existence constitutes a "defacto repeal" of the two provisions of the Ohio Constitution. (Amended Complaint, 6.) As the JobsOhio respondents incisively observe "this argument places her squarely in the same posture as ***every other person entitled to vote in this State***." (Emphasis sic.) (JobsOhio's Motion to Dismiss Amended Complaint, 36.)

{¶ 53} As to her claim that she has "standing" as a "business owner" and as a "business consultant," the JobsOhio respondents again incisively observe:

> [B]y claiming that she is involved in businesses that are considering incorporating in Ohio * * *, Ms. Ullmann does nothing to distinguish herself from any other potential businessperson [sic]. She does not allege that she or any of those businesses have actually been injured by the JobsOhio statutes—rather, she simply fears that 'if the company locates any affiliate in Ohio,' it might be treated unequally or

> arbitrarily. * * * Such remote and contingent allegations of harm do not establish an injury sufficient to confer standing.

(JobsOhio's Motion to Dismiss Amended Complaint, 36-37.)

{¶ 54} Clearly, relator has no standing as a consequence of her being a "business owner" or "business consultant" as she alleges in her amended complaint. (Amended Complaint, 5.)

{¶ 55} As to relator's claim to taxpayer standing, this court's decision in *Brown v. Columbus City School Bd. of Edn.,* 10th Dist. No. 08AP-1067, 2009-Ohio-3230, is instructive. In *Brown,* the appellants brought a declaratory judgment action in the common pleas court challenging the constitutionality of the current system of school funding in Ohio in which there exists disparities in per pupil education funding within a school district. The common pleas court dismissed the action on grounds that the plaintiffs lacked standing. In affirming the judgment of the common pleas court, this court explained:

> Appellants have no direct personal stake in the outcome of the controversy. Appellants have not suffered and are not threatened with any direct and concrete injury in a manner or degree different from that suffered by the public in general. Appellants alleged only that they were taxpayers in the city of Columbus. Appellants do not allege they are students in the Columbus City Schools system or are parents of students in the school system. If the merits of their action were to be unsuccessful, they could show no personal harm or damage that would result as separate from any harm suffered by the general taxpaying public. In other words, if the present system of allocating funds between Columbus City Schools would remain as is, appellants would suffer no individual injury.

*Id.* at ¶ 13.

{¶ 56} Clearly, relator's claim to standing on grounds that she is a taxpayer must be rejected.

{¶ 57} Relator further claims standing on grounds that she purchased spirituous liquor at a state operated liquor store and, thus, paid money into the fund that supports JobsOhio.

{¶ 58} When a taxpayer has contributed to a special fund, the taxpayer must separately demonstrate a "special interest" in that fund beyond merely contributing to it in order to show standing. *Walgate* at ¶ 20.

{¶ 59} Here, relator does not allege a "special interest" in the fund that she allegedly paid into when she purchased spirituous liquor. Accordingly, relator's purchase of spirituous liquor does not confer standing on her.

{¶ 60} Finally, relator claims standing "as she is requesting the court order the attorney general appoint her as special counsel to determine how to judicially dissolve JobsOhio." (Amended Complaint, 7.)

{¶ 61} Again, as the Supreme Court of Ohio indicated in *Cuyahoga Cty.,* standing to attack the constitutionality of a legislative enactment can exist only where a litigant has suffered or is threatened with direct and concrete injury. The attorney general has no obligation to appoint relator as special counsel. Accordingly, there can be no injury by virtue of the attorney general's refusal or failure to appoint relator as special counsel.

{¶ 62} Clearly, relator does not have standing based upon the attorney general's failure to appoint her as special counsel.

## Jurisdiction

{¶ 63} Citing *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.,* 108 Ohio St.3d 432, 2006-Ohio-1327, respondents argue that this mandamus action is in actuality a disguised action for declaratory judgment and prohibitory injunction and, thus, this court lacks jurisdiction.

{¶ 64} In *State ex rel. Fenske v. McGovern,* 11 Ohio St.3d 129 (1984), the syllabus states:

> 1. The extraordinary remedy of mandatory injunction in the court of common pleas is not a plain and adequate remedy in the ordinary course of law precluding exercise of the original jurisdiction in mandamus conferred upon a court of appeals by Section 3, Article IV of the Ohio Constitution. (Paragraph six of the syllabus of *State, ex rel. Pressley, v. Indus. Comm.,* 11 Ohio St.2d 141 [40 O.O.2d 141], approved and followed.)
>
> 2. The availability of an action for declaratory judgment does not bar the issuance of a writ of mandamus if the relator demonstrates a clear legal right thereto, although the

availability of declaratory judgment may be considered by the court as an element in exercising its discretion whether a writ should issue. However, where declaratory judgment would not be a complete remedy unless coupled with ancillary relief in the nature of mandatory injunction, the availability of declaratory injunction is not an appropriate basis to deny a writ to which the relator is otherwise entitled.

{¶ 65} There is no question here that relator seeks a declaration that the JobsOhio statutes contravene the Ohio Constitution. Apparently, relator's amended complaint is constructed to show that her action would require a mandatory injunction if filed in common pleas court as a declaratory judgment action. That is, prohibitory injunction would not provide sufficient relief in the common pleas court.

{¶ 66} Here, respondents argue that the amended complaint is artfully "couched in terms of compelling affirmative duties" in order to disguise the true nature of the action that actually seeks prohibitory injunction. *United Auto.* at ¶ 42. That is, according to respondents, relator is actually seeking a declaration that the JobsOhio statutes are unconstitutional and an injunction prohibiting respondents from continuing to treat the JobsOhio statutes as good law.

{¶ 67} In the magistrate's view, it is not necessary to resolve the jurisdictional issue regarding whether the true object is either prohibitory injunction or mandatory injunction. Relator's lack of standing to bring this action moots the jurisdictional issue.

{¶ 68} Accordingly, for all the above reasons, it is the magistrate's decision that this court grant the respondents' motions to dismiss.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).