[Cite as *Universal Acceptance Corp. v. Colbert*, 2019-Ohio-4377.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


Universal Acceptance Corporation

    Appellee

v.

Antoine Colbert

    Appellant

Court of Appeals No. L-18-1169

Trial Court No. CVF1701144


**DECISION AND JUDGMENT**

Decided: October 25, 2019

* * * * *

Anthony J. Calamunci, for appellee.

Antoine Colbert, pro se.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a verdict of the Sylvania Municipal Court which entered a judgment for appellee. For the reasons set forth below, this court affirms the judgment of the trial court.

**{¶ 2}** The following facts are relevant to this appeal. On September 28, 2017, plaintiff-appellee, Universal Acceptance Corporation, filed a complaint against pro se defendant-appellant, Antoine Colbert, claiming breach of the contractual financing terms of a 2005 ES 330 Lexus motor vehicle purchase entered on June 10, 2016. Appellee sought monetary damages relief of $9,129.84 plus interest and other relief, including repossession of the motor vehicle. Appellant responded with a series of pleadings and affirmative defenses which, in turn, appellee opposed.

**{¶ 3}** The record contains the delivery confirmation receipt of the complaint and summons from the U.S. Postal Service bearing appellant's signature and dated October 21, 2017. In his November 2, 2017 "Answer and Motion to Transfer Venue/Dismiss," appellant made a "special appearance to challenge the jurisdiction of this court" and denied, "under duress and not granting any jurisdiction for this court to make judgment as this case should be transferred," all of the allegations in the complaint. Specifically, appellant answered he never received a loan from appellee, has paid according to the terms of the contract, and demanded to receive an accounting. In addition to seeking transfer "to the Court of Common Pleas of Lucas County, Ohio, the county in which the claim arose," appellant raised two affirmative defenses: (1) "breach of warranty against title infringement" and (2) "loan void for failure of moneylender to comply with statute."

2.

{¶ 4} Plaintiff opposed appellant's request for a transfer of venue, "denies each and every averment contained in Defendant's Counterclaim," and asserted the affirmative defense that appellant failed to state a claim upon which relief could be granted.

{¶ 5} Appellant then filed an amended answer on December 6, 2017, in which he referred to himself as "Defendant/Counterclaimant" and continued to seek a transfer of venue due to inconvenience and raised two more affirmative defenses: (3) material alteration of the promissory note such that it "has become, and is, absolutely void," and (4) plaintiff is not a real party in interest.

{¶ 6} Plaintiff further opposed appellant's request for a transfer of venue.

{¶ 7} On December 27, 2017, the trial court decided the various pleadings before it, and treated them as follows: (1) appellant's motion to dismiss for improper venue under Civ.R. 3(B)(3) and (6), (2) appellant's motion to dismiss for lack of personal jurisdiction under Civ.R. 4.1 and 4.2, (3) appellee's motion to dismiss appellant's counterclaim for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6), and (4) appellant's motion to dismiss under Civ.R. 17(A) for appellee's failure to be the real party in interest. After evaluating each motion and making a number of relevant findings, the trial court denied them.

{¶ 8} First, the trial court found, citing to Civ.R. 3(B)(3) and (6), that venue with the Sylvania Municipal Court was proper because "[t]he record in this case contains no evidence to suggest that the parties signed the retail installment contract anywhere other than Dave White Acura located [in Sylvania, Ohio]," which is within the trial court's

3.

territorial jurisdiction. The trial court concluded, "That proceedings in the Lucas County Court of Common Pleas would be more convenient for Defendant does not require a transfer."

{¶ 9} Second, the trial court found, citing to Civ.R. 4, 4.1 and 4.2, it had personal jurisdiction over appellant. The trial court concluded, "Defendant has not even suggested that he did not receive service of the complaint. He seems to have confused the concepts of venue and personal jurisdiction. The record indicates that Defendant did in fact receive proper service of the summons and complaint. This Court thus obtained personal jurisdiction over him."

{¶ 10} Third, the trial court found, citing to Civ.R. 8(A), that appellant's "pro-se counterclaim * * * satisfied the * * * minimal notice pleading [requirement]." Appellant alleged in his counterclaim "that any obligation owed to Plaintiff should be reduced by the sum that Dave White Acura owes him." The trial court then denied appellee's Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

{¶ 11} Fourth, the trial court found, citing to Civ.R. 17(A), appellee was the real party in interest and could file suit against appellant. The trial court then denied appellant's Civ.R. 17(A) motion to dismiss "as not appropriate at this stage of the proceedings" in light of appellant's counterclaim and demand for relief.

{¶ 12} The bench trial commenced on March 30, 2018, and the transcript is in the record. Appellee produced one witness at trial, who was subjected to appellant's cross-examination, and admitted various exhibits into evidence without objection. After

4.

appellee rested, appellant then testified on his behalf without any exhibits. He testified, "My main thing I'm here in court for right now (unintelligible) contract was altered after I left. * * * And it was assigned to two other people that I was not aware of and I'm upset by that and I clearly said it, I want my money back, this contract is fraud." Appellee did not cross-examine him.

{¶ 13} At the conclusion of the trial, the trial court summarized appellant's testimony: "If I understand defendant's defense and counterclaim, he's contending the contract is altered and therefore, void abonitia (sic.), that means from the beginning." The trial court then took the matter under advisement.

{¶ 14} Eventually the trial court issued its decision on July 10, 2018, stating, in part:

Plaintiff presented the testimony of assistant manager Craig Markley. Markley testified that, on June 10, 2016, Defendant had signed a retail installment contract and security agreement for the purchase of a vehicle and that he had defaulted on his payments. Markley testified that Plaintiff had repossessed the vehicle because Defendant defaulted on his payments and had not presented proof of insurance.

Markley authenticated several exhibits: (1) the retail installment contract and security agreement; (2) documentation of Defendant's payment history from August 4, 2016 thru August 4, 2017; (3) the application for certificate of title, signed by Defendant and listing Plaintiff

as a lien holder; and (4) Defendant's Ohio certificate of title, which listed Plaintiff as the first lien holder. The retail installment contract and security agreement, signed by Defendant on June 10, 2016, set forth Defendant's promise to pay "the principle amount of $10,986.51, plus finance charges accruing on the unpaid balance at the rate of 20.99% per year from today's date until paid in full." The contract provided the truth-in-lending disclosures, including that Defendant would owe $394.22 each month for thirty-nine months, beginning on July 25, 2016.

Defendant testified on his own behalf. He explained that, about two months after the date of purchase, the vehicle had fallen into disrepair, the expenses for which caused him to get behind on his loan payments. He stated that he had contacted Dave White Acura about warranty issues, had notified Dave While Acura that he would stop payment due to breach of the implied warranty of merchantability, and had demanded his money back. * * * Notably, Defendant denied neither that he had signed the contract nor that he had defaulted on its terms.

{¶ 15} The trial court then held a "supplemental" hearing on June 1, 2018, on appellant's claim appellee is not a real party in interest. Although the transcript of that hearing is not in the record, the trial court's July 10, 2019 journalized judgment entry states, in part:

6.

Plaintiff informed this Court that the retail installment contract had been assigned to Huntington as collateral security for a line of credit and that Huntington could not enforce the contract unless Plaintiff defaulted on its obligation to repay Huntington. Plaintiff submitted the November 5, 2013 "Revolving Note," a loan agreement between Plaintiff and Huntington. According to the note, Huntington would loan money to Plaintiff, secured by "among other things, a first-lien security interest in the Collateral." See Section 3.9. And Section 4.1 provides that Plaintiff granted a security interest in the collateral "to the extent that the nature of such Collateral and/or ownership interest in such Collateral allows such Company to grant, pledge, and/or assign such security interest * * *." According to Section 4.3, upon default by Plaintiff and upon Huntington's request, Plaintiff's accounts would be collected through a "lockbox arrangement" such that the account debtors would pay Huntington instead of Plaintiff.

* * *

The language of the revolving note and the testimony presented at the supplemental hearing revealed that Plaintiff pledge to Huntington Defendant's retail installment contract as collateral security. * * * Plaintiff was the real party in interest. Huntington's right to collect from Defendant would arise only if Plaintiff defaulted on the terms of the revolving note,

At the time of Defendant's default, Plaintiff was entitled to enforce the retail installment contract.

Although Defendant characterized the assignment to Huntington as fraudulent, using the retail installment contract as collateral security did not affect Defendant's rights under the contract or violate any Ohio law. The retail installment contract itself authorized subsequent assignments. Page one identified Dave White Acura as the seller and defined "' [w]e' and 'us' [to] mean the Seller above, its successors and assigns." And the assignment-by-seller section stated: "Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract." Defendant failed to support his fraud argument with citations to legal authority. And the language of the retail installment contract itself authorized subsequent assignments. Defendant thus cannot show any wrongdoing in assigning the contract to Huntington as collateral security.

{¶ 16} As a result of the bench trial and supplemental hearing, the trial court determined, after considering all of the evidence in the record, appellee is a real party in interest, appellant defaulted on the terms of the retail installment contract and security agreement by failing to make the required monthly payments, the contract allowed appellee to demand the remaining unpaid balance and to repossess the vehicle, granted

8.

judgment to appellee, awarded damages to appellee, and dismissed appellant's counterclaim of breach of an implied warranty of merchantability.

{¶ 17} Appellant filed this pro se appeal setting forth six assignments of error:

I. Trial court erred when it assumed it had jurisdiction to proceed.

II. Trial court erred when it decided appellant breached the retail installment contract.

III. Trial court erred when it decided appellee was the real party in interest.

IV. Trial court erred when it ruled in favor of appellee despite affirmative defenses.

V. Trial court erred when it ruled in favor of appellee with insufficient evidence.

VI. Trial court erred when it failed to join Huntington National Bank as [a] party.

{¶ 18} We will address appellant's assignments of error out of order.

## I. Personal Jurisdiction

{¶ 19} Appellant argued for his first assignment of error the trial court erred "when it assumed it had jurisdiction to proceed." Appellant argued the trial court lacked jurisdiction over him because his "special appearance [was] made solely for the purpose of objecting to the mode, manner, or absence of the acquisition of jurisdiction over the person of defendant."

9.

**{¶ 20}** "'Jurisdiction' means 'the courts' statutory or constitutional power to adjudicate the case.' The term encompasses jurisdiction over the subject matter and over the person. * * * 'If a court acts without jurisdiction, then any proclamation by that court is void.'" (Citations omitted.) *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. Personal jurisdiction is rudimentary for a court to render a valid judgment over a defendant. *Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984).

> This may be acquired either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court. The latter may more accurately be referred to as a waiver of certain affirmative defenses, including jurisdiction over the person under the Rules of Civil Procedure.

*Id.*

**{¶ 21}** We review the trial court's decision on personal jurisdiction de novo as a question of law. *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 11. From our de novo review, we find by a preponderance of the evidence the trial court had personal jurisdiction over the defendant. The record contains the undisputed delivery confirmation receipt of the complaint and summons from the U.S. Postal Service bearing appellant's signature and dated October 21, 2017. Civ.R.

10.

4.1(A)(1)(a) and 4.2(A). The record also shows appellant filed numerous pleadings attacking the merits of appellee's claims against him, which waived his attack on the trial court's jurisdiction. *Scott v. Davis*, 173 Ohio St. 252, 255, 181 N.E.2d 470, 473 (1962).

{¶ 22} Appellant's first assignment of error is not well-taken.

## II. Real Party in Interest

{¶ 23} Appellant's second, third and sixth assignments of error appear to collectively challenge appellee's status as a real party in interest because appellee assigned, without appellant's consent, the subject contract to a non-party, The Huntington National Bank. As a result of that assignment, appellant argues the contract he signed with appellee became void, and appellee lacked standing to commence the litigation against him.

{¶ 24} We review whether standing exists as a matter of law de novo. *Bayview Loan Servicing, LLC v. Vasko*, 6th Dist. No. WD-17-029, 2018-Ohio-38, 102 N.E.3d 1204, ¶ 29, citing *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

{¶ 25} Standing is a fundamental concept, a "jurisdictional requirement," that a party must have some real interest in the subject matter of the action. (Citations omitted.) *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 22. The issue of standing may be raised at any time during the pendency of the proceedings. *Id.* Standing is to be determined as of the filing of the complaint. *Id.* at ¶ 27. The failure of standing as of the filing of the complaint compels a dismissal

11.

without prejudice. *Id.* at ¶ 40. No specific documents are necessary to establish standing due to the particular facts in each case. *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, 60 N.E.3d 1243, ¶ 30-31.

{¶ 26} Civ.R. 17(A) states, "Every action shall be prosecuted in the name of the real party in interest." Civ.R. 19(A)(1) states, "A person who is subject to service of process shall be joined as a party in the action if in his absence complete relief cannot be accorded among those already parties * * *."

{¶ 27} It is undisputed in the record appellant signed on or about June 10, 2016, a contract with appellee to finance the purchase of a 2005 Lexus vehicle. It is also undisputed in the record that as of the filing of the complaint on September 28, 2017, the contract now had a stamp on it stating, "This contract is assigned to The Huntington National Bank." During the March 30, 2018 trial and the June 1, 2018 supplemental hearing, the record shows that appellee made a business decision to seek a revolving loan installment from The Huntington National Bank, and to secure that loan installment appellee granted the bank a first-lien security interest in the "Collateral" described as various categories of instruments, including appellee's contract with appellant.

{¶ 28} The assignment by appellee of appellant's retail installment contract and security agreement to The Huntington National Bank as collateral security to appellee's loan transaction with the bank "does not divest the assignor of his general property in the policy, but creates only a lien in favor of the assignee to the extent of the debt owed." *Katz v. Ohio Nat. Bank*, 127 Ohio St. 531, 535, 191 N.E. 782 (1934). As a result, the

12.

bank's status as a collateral assignee did not impair appellee's status as the real party in interest to execute against appellant on the contract, and appellee retained standing to sue for breach of contract. *DCR, Mtge. IV SUB I, L.L.C. v. Hines Invests., L.L.C.*, 5th Dist. Fairfield No. 12-CA-37, 2013-Ohio-1970, ¶ 18. Joinder of the collateral assignee was unnecessary. *See State ex rel. Ford v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396, ¶ 59.

{¶ 29} We reviewed the record de novo and find appellee was the real party in interest to enforce the provisions of the contract with appellant. The collateral assignment to a non-party did not negate appellee's standing to commence the litigation against appellant, and joinder of the collateral assignee was not necessary.

{¶ 30} Appellant's second, third and sixth assignments of error are not well-taken.

### III. Affirmative Defenses

{¶ 31} Appellant argues in his fourth assignment of error the trial court's judgment is void because his "affirmative defenses * * * would stop the trial court from ruling in favor of appellee." Appellant argued his affirmative defenses are: improper venue, breach of warranty against title infringement, failure to comply with R.C. 1317.032(A)(1)(2), statute of frauds, and material alteration. Appellant further argued, "Appellee has not defeated the defenses of appellant, there is no proof that appellant owes appellee anything pursuant to Statute of Frauds, and has proceeded to judgment in violation of the venue requirements."

13.

**{¶ 32}** We reviewed the record and find that appellant has the burden of proving each of his affirmative defenses by a preponderance of the evidence. *State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973). While appellant may have raised various affirmative defenses during the course of this litigation, we do not find the record shows he carried his burdens for each by the greater weight of the evidence. The trial court addressed each of appellant's affirmative defenses in the record, and we do not find any reversible error in each of those holdings.

**{¶ 33}** Appellant's fourth assignment of error is not well-taken.

### IV. Sufficiency of Evidence

**{¶ 34}** Appellant argues in his fifth assignment of error the trial court's judgment is void because there was insufficient evidence to find in favor of appellee. Appellant argued, "The evidence appellee submitted [was] not the best evidence and it was an abuse of discretion to allow the uncertified undisclosed lockbox agreement to be used against appellant."

> The term "sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." This standard is very narrow and tests only whether there was evidence presented which supports each element of the prima facie case. (Citations omitted.)

*In re Estate of Flowers*, 2017-Ohio-1310, 88 N.E.3d 599, ¶ 83 (6th Dist.).

14.

{¶ 35} We reviewed the record and find there was sufficient evidence in the record to support the trial court's judgment as a matter of law that appellee is a real party in interest, appellant defaulted on the terms of the retail installment contract and security agreement, the contract allowed appellee to demand the remaining unpaid balance and to repossess the vehicle, and awarded relief to appellee.

{¶ 36} Appellant's fifth assignment of error is not well-taken.

## V. Conclusion

{¶ 37} On consideration whereof, the judgment of the Sylvania Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.