UNION COUNTY COMMISSIONERS, et al., Plaintiffs,

v.

Secretary of State Jennifer BRUNNER, Defendant.

2008-Ohio-2833.]

Court of Common Pleas of Ohio,
Civil Division, Franklin County.

No. 08 CVH–02–2032.

Decided Feb. 19, 2008.

David Phillips, Union County Prosecuting Attorney, and Melissa Chase, Assistant Prosecuting Attorney, for plaintiffs.

Marc Dann, Attorney General, and Richard Coglianese and Pearl Chin, Assistant Attorneys General, for defendant.

BROWN, Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

{¶ 1} This is a case about legal authority. The commissioners of Union County have sued to challenge the legal authority of the secretary of state to direct the board of elections in that county. The secretary of state has questioned the legal authority of the commissioners to bring this lawsuit. The secretary has also questioned the legal authority of this court to decide this case in the absence of the board of elections. And importantly, in this as in all cases, the court must examine its own legal authority to decide the questions presented.

{¶ 2} In this case, the court concludes that the commissioners lack the legal authority to challenge the secretary of state's directive, and this court lacks the legal authority to decide this case in the absence of the board of elections. Consequently, this court has no legal authority to consider the commissioners' challenge to the secretary of state and must dismiss this case.

## I. Introduction

{¶ 3} This matter came before the court for a consolidated preliminary injunction hearing and trial on the merits on February 14, 2008. The Union County Commissioners appeared with their counsel, Union County Prosecutor David Phillips and Assistant Union County Prosecutor Melissa Chase. A designated representative of Secretary of State Jennifer Brunner appeared with her counsel, Assistant Attorneys General Richard Coglianese and Pearl Chin.

{¶ 4} At the conclusion of the hearing, the court allowed the parties to file post-hearing briefs. The commissioners and the secretary filed their briefs on February 15, 2008.

{¶ 5} The following are the court's findings of fact and conclusions of law based upon the stipulated exhibits provided by the parties and the admissible evidence presented at trial.

## II. Findings of fact

{¶ 6} 1. The Union County Board of Elections ("UCBOE") uses direct recording electronic voting machines ("DREs") on election day as its primary voting system. Before purchasing the DREs, the UCBOE researched and tested several voting systems and voting-system vendors to find a suitable replacement for its outdated punch-card voting equipment. In 2005, the commissioners, upon the recommendation of the UCBOE, made the decision to adopt DREs for use in elections. The initial cost of these voting machines was over $550,000.

{¶ 7} 2. Although the UCBOE uses DREs as its primary voting system on election day, it also uses other voting equipment and systems in connection with voting. For example, the commissioners, upon recommendation of the UCBOE, purchased central count optical scan ("CCOS") equipment in 2005. The CCOS equipment is used by the UCBOE to vote mail-in absentee voters prior to election day and to vote provisional voters on election day. By law, the CCOS equipment may also be used to vote absentee voters who vote in person at the UCBOE office prior to election day upon the voter's request. Additionally, the CCOS equipment is used for curbside voting, if requested by a voter, and would be used in the event of an emergency, such as a power failure, that rendered Union County's DREs inoperable on election day.

{¶ 8} 3. On January 2, 2008, Secretary of State Jennifer Brunner issued Directive 2008–01. The directive applies only to those approximately 57 Ohio counties that use DREs on election day. The directive requires the boards of elections of those counties "to provide an optical scan ballot to any voter who requests it as an alternative method to casting a ballot on a DRE voting machine."

{¶ 9} The directive sets forth a formula for determining the minimum number of optical scan ballots that a board of elections must supply for each precinct. Specifically, the directive provides that to determine the minimum number of optical scan ballots for each precinct, a local board of elections should multiply the number of ballots cast in the precinct at a like election by ten percent. In addition, the directive provides that each board of elections must provide a secure ballot container for completed optical scan ballots and a private area for a voter to mark his or her optical scan ballot. The directive further states that the optical scan ballots are to be centrally counted by each board on election night as part of the unofficial canvas. Finally, the directive sets forth cost-documentation requirements.

{¶ 10} 4. On January 8, 2008, Robert Parrott, a member of the UCBOE, requested an opinion from the Union County Prosecutor regarding whether the UCBOE must comply with the secretary's directive. That same day, the prosecutor advised Parrott, the UCBOE, and the commissioners of his opinion that the secretary lacked the authority to issue the directive. The prosecutor opined that the directive was not binding on the UCBOE.

{¶ 11} 5. On January 9, 2008, the UCBOE held a vote to determine whether it would follow the opinion of the prosecutor or comply with the directive. The initial vote resulted in a two-to-two tie. Although the UCBOE attempted the vote three times, each time the vote resulted in a tie. Accordingly, the UCBOE submitted the vote to the secretary to break the tie as permitted by Ohio law.

{¶ 12} 6. Because of the UCBOE's failure to submit its vote to the secretary in the manner required by statute, the secretary did not break the tie until February 5, 2008. At that time, the secretary broke the tie and voted in favor of complying with the directive. Because of this vote, the UCBOE has indicated affirmatively its intention to comply with the directive.

{¶ 13} 7. Parrott testified at trial that he feared possible removal from his position on the UCBOE as a result of his vote not to comply with the directive. While noncompliance may have presented an issue, the court finds that there is no credible evidence before the court that the UCBOE or its members had a reasonable basis to believe that they would be removed from office if they initiated a lawsuit regarding the lawfulness of the secretary's directive.

{¶ 14} 8. The UCBOE has participated in previous lawsuits challenging the authority of the secretary of state to issue certain directives. Specifically, in 2005, the UCBOE formally voted to join in a lawsuit against former Secretary of State Kenneth Blackwell, challenging his authority to select particular voting equipment and voting equipment vendors for use by Ohio counties. Therefore, the UCBOE is aware of its ability to sue the secretary of state regarding his or her authority to issue certain directives and has exercised that ability in the past. The UCBOE declined to exercise its ability to sue the secretary regarding the directive.

{¶ 15} 9. Additionally, Parrott's concerns regarding his potential removal if he participated in challenging the directive are not credible based on his active and extensive participation as a witness for the commissioners in this lawsuit.

{¶ 16} 10. Because the issue of the UCBOE's compliance with the directive has been resolved, the UCBOE and its staff have been acting to implement the directive. Although the directive does not alter many election-day procedures, the UCBOE views the directive as necessitating two separate and parallel voting systems—a DRE voting system and a CCOS voting system. As a result, the UCBOE voted to double the number of poll workers at each precinct so that there will be four poll workers on hand on election day to process voters on the DRE system and four additional poll workers to process voters on the CCOS system. Obtaining just four poll workers per precinct is difficult in Union County, and obtaining eight poll workers per precinct may not be possible, particularly given the short time in which they must be hired.

{¶ 17} 11. The UCBOE has also determined that implementation of the directive requires the purchase of 150 new voting booths, 50 ballot boxes, 50 stub boxes, ballot envelopes, secrecy envelopes, new training manuals, and other additional supplies. The UCBOE asserts that it does not currently own these supplies, and it believes that none of its existing supplies can be easily adapted. Additionally, the UCBOE has determined that it must supply each of its precincts

with CCOS ballots in the amount of 101 percent of all voters who voted in the precinct in the last presidential primary. Although the directive requires only a minimum of ten percent, the UCBOE has determined that it must be in a position to provide CCOS ballots for every possible election-day voter in Union County to comply fully with the directive. Consequently, the UCBOE has projected that it needs over $86,000 in additional funds to carry out the directive.

{¶ 18} 12. Boards of elections in other counties affected by the directive have found that implementation of the directive will cost substantially less than projected by Union County. The other counties include both counties similar in size to Union County and counties that greatly exceed the size of Union County.

{¶ 19} 13. Because the UCBOE's 2008 budget did not include or contemplate the additional expenses projected as a result of the directive, the UCBOE does not have the $86,000 in its budget to purchase the additional supplies and to hire the additional poll workers it believes it needs.

{¶ 20} 14. The UCBOE submitted a request for these additional funds to the commissioners, but the commissioners denied the request for the appropriation of additional funds in order to implement the directive in the manner determined by the UCBOE.

{¶ 21} 15. Boards of elections have a statutory remedy to apply to their common pleas court to determine the funds necessary and proper for appropriation by the county commissioners. To date, it appears that the UCBOE has not filed such an application because of the directive.

{¶ 22} 16. Rather than provide the additional funds requested by the UCBOE, the commissioners voted to initiate a lawsuit against the secretary challenging her authority to issue the directive. The commissioners, through the Union County prosecutor, informed the UCBOE of their intention to sue the secretary immediately upon the UCBOE's receipt of the secretary's tie-breaking vote in favor of compliance with the directive. Despite having been provided the opportunity to join in the commissioners' lawsuit, the UCBOE declined to sue or participate as a party to the lawsuit. None of the four UCBOE members elected to join the lawsuit in their individual capacities as UCBOE members.

{¶ 23} 17. The commissioners filed this action in the Union County Common Pleas Court on February 5, 2008. Later that day, the secretary appeared in the case and filed a motion with the Union County Common Pleas Court requesting that venue be transferred to this court in accordance with R.C. 3501.05.

{¶ 24} 18. In the morning of February 6, 2008, the commissioners filed an ex parte motion for a temporary restraining order with the Union County Common Pleas Court. The motion was improperly granted approximately a half hour later without any notice to the secretary and without providing the secretary an

opportunity to be heard in opposition. In the court's ex parte temporary restraining order, the court also transferred this action to the Franklin County Common Pleas Court.

{¶ 25} 19. Because the transfer of the case from Union County to Franklin County was made by ordinary mail, the Franklin County Common Pleas Court did not receive the case until late in the day on Friday, February 8, 2008. At that time, the secretary filed a motion to dissolve the temporary restraining order. The Union County prosecutor was notified immediately, and this court awaited his arrival before proceeding to consider the secretary's motion. After an oral hearing and after granting the prosecutor's request for the parties to brief the issues more fully, this court dissolved the temporary restraining order on February 11, 2008.

{¶ 26} 20. Because of this court's dissolution of the temporary restraining order and the UCBOE's vote to comply with the directive, the UCBOE is proceeding to implement the directive for the March 4, 2008 primary.

{¶ 27} 21. Despite the court's repeatedly informing the parties of its concerns regarding the maintenance of this action in the absence of the UCBOE, no party has moved to join or amend its pleadings to add the UCBOE as a party to this lawsuit.

## III. Conclusions of law

{¶ 28} 1. As an initial matter, the court finds that the secretary raises three procedural, nonsubstantive issues with this lawsuit: (1) the commissioners' lack of standing, (2) the jurisdictional defect of the commissioners' failure to join the UCBOE as a party, and (3) the mootness of the issues raised by the commissioners based upon the UCBOE's current implementation of the directive. Contrary to the prosecutor's assertions, the doctrines of standing, jurisdiction, and mootness are important principles of law that cannot be glossed over or ignored. These principles are fundamental to our system of justice, and the law requires this court to address these issues before considering the merits of the commissioners' claims.

### A. Standing

{¶ 29} 2. Before a court can consider the merits of an action, the court must make a preliminary inquiry into a litigant's standing to prosecute the legal claims.[1] The question of standing depends upon whether the party has alleged such a personal stake in the outcome of the controversy as to ensure that the

---

1. *Cuyahoga Cty. Bd. of Commrs. v. State,* 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 22.

dispute will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.[2]

█ {¶ 30} 3. Generally, in order for a party to demonstrate a personal stake in the outcome of a legal controversy, the party must demonstrate that it will suffer some direct and concrete injury because of the controversy.[3]

██ {¶ 31} 4. The doctrine of standing is based on the principle that courts should decide only cases or controversies between litigants whose interests are adverse to each other and should refrain from giving advisory opinions to avoid the imposition by judgment of premature declarations or advice upon potential controversies.[4] The standing requirement prohibits the "use of the courts to those who, while not sustaining a legal injury, nevertheless seek to air their grievances concerning the conduct of government."[5] The doctrine of standing directs those persons to other forums.

{¶ 32} 5. In this case, the commissioners challenge the secretary's authority to issue the directive. In their pretrial briefing and at trial, the commissioners argue that they, and by extension Union County, will suffer two types of direct and concrete injury if the directive is implemented and enforced: (1) the unlawful usurpation of their authority to select voting equipment for use in the county and (2) the unlawful expenditure of county funds by the UCBOE. The court will address each of these alleged injuries separately.

█ {¶ 33} 6. Boards of elections occupy a somewhat unique position in the scheme of local government. Unlike county agencies, boards of elections are under the control of and answerable only to the secretary of state and are not county officers.[6] Except in those limited instances where boards of county commissioners are given explicit statutory authority, boards of county commissioners have no authority to control the actions of boards of elections. Such a separation of boards of elections and the county protects the independence of the

---

**2.** *State ex rel. Dallman v. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178–179, 64 O.O.2d 103, 298 N.E.2d 515, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636.

**3.** See *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d at 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 22.

**4.** *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371.

**5.** *Racing Guild of Ohio, Local 304 v. Ohio State Racing Comm.* (1986), 28 Ohio St.3d 317, 321, 28 OBR 386, 503 N.E.2d 1025.

**6.** See *State ex rel. Columbus Blank Book Mfg. Co. v. Ayres* (1943), 142 Ohio St. 216, 222, 27 O.O. 176, 51 N.E.2d 636, and paragraph two of the syllabus; see also *State ex rel. Ruggles v. Howser* (May 2, 1988), Brown App. No. 87–11–0017, 1988 WL 41496.

county boards of elections so that the boards may effectively and efficiently conduct public elections and avoid political maneuvering that might compromise the independence of elections.

{¶ 34} 7.  R.C. 3506.02 provides:

Voting machines, marking devices, and automatic tabulating equipment may be adopted for use in elections in any county in the following manner:

(A)  By the board of elections;

(B)  By the board of county commissioners of such county on the recommendation of the board of elections;

(C)  By the affirmative vote of a majority of the electors of such county * * *.

Accordingly, by statute, the commissioners have some limited authority to adopt certain recommended voting equipment for use in Union County elections.

{¶ 35} 8.  The commissioners assert that R.C. 3506.02 is applicable to this case because the CCOS equipment required by the directive is "automatic tabulating equipment."  The secretary argues that the directive does not implicate R.C. 3506.02 because it merely requires that additional paper ballots be supplied to precincts on election day and does not require the adoption of a new or different voting system.  The secretary contends that a "ballot" is an election supply and not a voting machine, marking device, or automated tabulating equipment.

{¶ 36} 9.  Even assuming that the secretary's directive implicates R.C. 3506.02, this court finds that the commissioners have failed to demonstrate any direct and concrete injury to their rights under R.C. 3506.02 by the directive.

{¶ 37} 10.  In 2005, the commissioners, upon the recommendation of the UCBOE, voted to adopt DREs for use in Union County elections.  There is no evidence in the record that the commissioners' vote to purchase the DREs specified the particular elections for which the DREs were purchased.  The commissioners also voted to adopt CCOS equipment for use in Union County elections upon the recommendation of the UCBOE.  Again, there is no evidence that the commissioners specified the particular elections for which the CCOS equipment was purchased.

{¶ 38} 11.  The commissioners argue that the secretary's directive infringes upon or usurps their authority to adopt certain voting equipment for use by mandating that another, additional voting system be used in Union County and other similarly situated counties.  According to the commissioners, the secretary is unlawfully substituting her preferred voting system for the DRE voting system lawfully adopted by the commissioners.

{¶ 39} 12.  Upon review of R.C. 3506.02, this court finds that the statute grants three entities the authority to adopt voting equipment for use in elections.

The statute lists the three entities with authority to adopt voting equipment in neither the conjunctive nor the disjunctive. There is no provision in the statute that renders one entity superior to another or that indicates that the action of one entity precludes action by another. However, boards of county commissioners may act under R.C. 3506.02 only on the recommendation of the local board of elections.

{¶ 40} 13. R.C. 3506.02 does not preclude the UCBOE from adopting CCOS equipment for use in elections in the manner suggested by the secretary's directive without the approval of the commissioners. The evidence in the record demonstrates that the UCBOE voted to comply with the directive. Additionally, the evidence demonstrates that the UCBOE declined to join the commissioners in this lawsuit or otherwise to challenge the secretary's authority to issue the directive. As a result, even assuming that R.C. 3506.02 is applicable, the UCBOE has acted in accordance with that section and adopted the CCOS equipment and ballots for use in elections as directed by the secretary. The UCBOE's decision is in accordance with Ohio law and does not infringe upon the rights of the commissioners under R.C. 3506.02. Given that the UCBOE independently could have effected the exact outcome required by the directive, it does not appear that the commissioners have suffered any loss of authority or other injury because of the directive.

{¶ 41} 14. Similarly, there is nothing in R.C. 3506.02 to suggest that the commissioners could not have adopted both DREs and CCOS equipment for use in elections. In fact, this is exactly what occurred. The commissioners adopted DREs for use in elections, presumably for use as the primary voting method on election day, and the commissioners adopted CCOS equipment for use in elections, presumably for use with absentee, provisional, and certain other types of ballots.

{¶ 42} 15. Although R.C. 3506.02 provides that the commissioners may adopt certain voting equipment for use in elections, R.C. 3506.02 does not define "use" or require boards of county commissioners to specify exactly how certain voting equipment must be used by the UCBOE. Once commissioners adopt certain voting equipment for use in county elections, the commissioners do not have the additional authority to dictate how that equipment will be used. Boards of county commissioners do not have the authority to determine how elections will be conducted. Those decisions are left exclusively to boards of elections and the secretary of state.[7] As a result, the court finds that the commissioners have not demonstrated that they have any authority to dictate how the DREs and CCOS equipment purchased for the county will be used on

---

7. See R.C. 3501.11 and 3501.05.

election day. This court concludes that the commissioners' lack of authority to prescribe how the county's existing voting equipment will be used on election day renders them without injury based upon the secretary's issuance of a directive that merely directs how Union County's existing voting equipment will be used.

{¶ 43} 16. For these reasons, the court concludes that the commissioners have not demonstrated that the secretary's directive directly and specifically affects or diminishes their limited statutory rights under R.C. 3506.02.

{¶ 44} 17. The commissioners also argue that they will incur additional financial costs because of the secretary's directive, and these costs constitute a direct and concrete injury to the commissioners and, by extension, to the county. In support of this argument, the commissioners cite the approximately $86,000 the UCBOE projects it will cost in order to comply with the directive.

{¶ 45} 18. By statute, a board of county commissioners possesses the authority initially to review and pass upon the budgetary request of a board of elections.[8] However, the court finds no authority to support the proposition that this budgetary authority grants boards of commissioners the right to control how elections are conducted or provides them the right to challenge election decisions made by the secretary of state or the local board of elections.

{¶ 46} 19. In the event that a board of commissioners refuses to grant a board of elections the necessary and proper funds requested, a board of elections may apply to the common pleas court to fix the amount to be appropriated.[9]

{¶ 47} 20. The monetary burden of implementing the secretary's directive falls directly upon the UCBOE, not the commissioners. The UCBOE must expend the funds that are necessary and proper to carry out the directive. If, as in this case, the UCBOE lacks the funds to do so, the UCBOE may request additional funds from the commissioners.

{¶ 48} 21. The undisputed evidence before the court demonstrates that the commissioners have denied the UCBOE's request for the additional $86,000 the UCBOE believes it needs to comply with the directive. As a result, the commissioners have not incurred any additional expenses because of the secretary's directive at this time. Accordingly, the commissioners' assertion that the directive will cause them to incur financial obligations is premature.

{¶ 49} 22. R.C. 3501.17(A) precludes a board of elections from expending funds that it does not have. The commissioners assert that their failure to appropriate the approximately $86,000 requested by the UCBOE to implement

8. R.C. 3501.17(A).

9. R.C. 3501.17(A).

the directive automatically will result in the UCBOE's violation of R.C. 3501.17. The commissioners seem to suggest that they have some obligation to prevent the UCBOE from unlawfully expending funds. This argument is flawed for two reasons.

{¶ 50} First, there is no evidence in the record that the UCBOE intends to expend funds in violation of R.C. 3501.17. Although the commissioners have denied the request for an additional $86,000, the UCBOE may take a variety of actions that will not require the expenditure of $86,000 it does not have. The UCBOE may revisit the number of additional poll workers and the number and types of supplies it initially believed to be necessary to implement the directive. The UCBOE may determine that it can modify existing supplies or otherwise "make do," as other counties have done, in order to reduce the potential cost of implementing the directive. The UCBOE may have sufficient funds to cover these reduced costs or a reduced request may be submitted to the commissioners.

{¶ 51} Alternatively, the UCBOE may decide to apply to the Union County Common Pleas Court, pursuant to R.C. 3501.17(A), to fix the amount to be appropriated in order to implement the directive. Unlike in this case, that action undoubtedly would require findings regarding the reasonableness of the UCBOE's decisions concerning what additional poll workers and supplies truly are required by the directive. However, no such application has been filed, and there is no evidence in the record that the UCBOE intends to file such an application at this time.

{¶ 52} Second, the commissioners have presented no evidence or cited any legal authority to support their assertion that they have the authority proactively to prevent the UCBOE from making an expenditure that exceeds the UCBOE's budget. More importantly, the commissioners have presented no evidence or legal authority to establish that the commissioners have the power to enforce R.C. 3501.17 once the statute has been violated. R.C. 3501.17 is silent as to the party or entity that is responsible for ensuring compliance. However, R.C. 3501.05(M) provides that the secretary of state is responsible for compelling the observance of the election laws by county election officers, a provision that suggests that the secretary is the appropriate party to ensure the UCBOE's compliance with R.C. 3501.17. Furthermore, even if the commissioners had the authority proactively to prevent an unlawful expenditure by the UCBOE, an action against the UCBOE to enjoin it from such an expenditure would be the appropriate course of action, not a lawsuit against the secretary.

{¶ 53} 23. For these reasons, the court finds that the commissioners have failed to present evidence that they will incur a direct and concrete financial injury as a result of the directive.

{¶ 54} 24. The court recognizes that in their brief regarding standing, the commissioners suggest that the secretary's directive renders them potentially subject to a lawsuit from the American Civil Liberties Union ("ACLU"). The commissioners assert that the ACLU has sued the Cuyahoga County Commissioners and the Cuyahoga County Board of Elections in federal court concerning the use of a CCOS system on election day. According to the commissioners, their implementation of the directive utilizing CCOS ballots may subject them to the same type of suit brought against the Cuyahoga County Commissioners and Board of Elections.

{¶ 55} 25. The court finds that the speculative threat of a lawsuit by a third party does not confer standing upon the commissioners. There is no evidence in the record that any individual or group has or even intends to sue Union County if the UCBOE implements the directive. Furthermore, the ACLU lawsuit against the Cuyahoga County Commissioners and Board of Elections is not based upon Cuyahoga County's implementation of the directive. In fact, as a county that has opted not to use DREs on election day, Cuyahoga County is not even subject to the directive.

{¶ 56} 26. In certain limited circumstances, a party that otherwise lacks standing may be permitted to prosecute an action on behalf of a third party when the party lacking standing establishes that it (1) suffers its own injury in fact, (2) possesses a sufficiently close relationship with the person or entity that possesses the right, and (3) shows some hindrance that stands in the way of the third party from seeking relief on its own behalf.[10]

{¶ 57} 27. The commissioners suggest that they are bringing this action on behalf of Union County citizens as well as the UCBOE and its individual members. The court finds that the commissioners have presented no evidence to establish that Union County citizens, the UCBOE, or UCBOE members have some hindrance that stands in the way of their seeking relief on their own behalf. The court again notes that the UCBOE has joined in lawsuits challenging the authority of the secretary to issue particular directives and orders in the past. There is no evidence in the record to suggest that the UCBOE could not itself challenge the secretary's authority to issue the directive.

{¶ 58} 28. For all of the foregoing reasons, the court concludes that the commissioners have not demonstrated that they have suffered or will suffer any direct and concrete injury as a result of the secretary's issuance of the directive. The commissioners also have not demonstrated that they have the authority to

10. *N. Canton v. Canton*, 114 Ohio St.3d 253, 2007-Ohio-4005, 871 N.E.2d 586, citing *Kowalski v. Tesmer* (2004), 543 U.S. 125, 125 S.Ct. 564, 160 L.Ed.2d 519.

prosecute this action on behalf of some other individuals or entities. Accordingly, the court concludes that the commissioners lack standing to assert the claims before the court.

{¶ 59} 29. It is undisputed that the UCBOE would have standing to challenge the lawfulness of a directive of the secretary of state. However, in this case, the UCBOE has voted to comply with the directive and not to challenge the authority of the secretary.

### B. Failure to join the UCBOE as a party

{¶ 60} 30. In addition to demonstrating that they have the standing to prosecute this action, the commissioners also must demonstrate that this court has jurisdiction to decide these claims.

{¶ 61} 31. The commissioners have filed this action for declaratory judgment pursuant to R.C. 2721.12. That statute provides that when declaratory relief is sought, "all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding."

{¶ 62} 32. The absence of an interested and necessary party to a declaratory judgment action constitutes a jurisdictional defect that precludes a court from rendering a declaratory judgment.[11] In addition, the absence of a necessary party in a declaratory judgment action renders all other issues moot, including the merits.

{¶ 63} 33. The declaratory judgment statute is a substantive law that cannot be abridged, enlarged, or modified by the Civil Rules. Accordingly, joinder pursuant to Civ.R. 19 and 19.1 cannot be used to add an interested and necessary party to a declaratory judgment action.[12] However, a party seeking declaratory relief may add an interested and necessary party to an action by amending its pleading in accordance with Civ.R. 15.[13]

{¶ 64} 34. In this case, the secretary argues that the UCBOE, as well as 'the boards of elections of the other counties to which the directive is applicable, are interested and necessary parties to the commissioners' declaratory judgment action.

---

11. *Copeland v. Tracy* (1996), 111 Ohio App.3d 648, 655–656, 676 N.E.2d 1214; see also *Plumbers & Steamfitters Local Union 83 v. Union Local School Dist.* (1999), 86 Ohio St.3d 318, 321, 715 N.E.2d 127.

12. *Copeland,* 111 Ohio App.3d at 655–656, 676 N.E.2d 1214.

13. *Plumbers & Steamfitters,* 86 Ohio St.3d at 323, 715 N.E.2d 127.

{¶ 65} 35.  The court has reviewed the evidence and finds that the UCBOE has a legal interest that would be affected by a declaration regarding the secretary's authority to issue the directive.  The UCBOE is the specific entity charged with implementation of the directive.  As a result, the UCBOE has an undisputable legal interest in a declaration regarding whether the directive is lawful because such a declaration directly affects whether the UCBOE will implement the directive.  This court therefore finds that the UCBOE is an interested and necessary party to the declaratory judgment action.

{¶ 66} 36.  The presence of the UCBOE is further necessitated by the fact that in accordance with R.C. 3506.02,[14] boards of county commissioners have no independent authority to adopt voting equipment.  The commissioners are authorized to act under R.C. 3506.02 only upon the recommendation of the UCBOE.

{¶ 67} 37.  Although the commissioners have been notified throughout this litigation of the potential jurisdictional deficiencies with proceeding in the absence of the UCBOE, the commissioners have declined to seek leave to amend their complaint to add the UCBOE as a party.

{¶ 68} 38.  This court concludes that in the absence of the UCBOE, it lacks jurisdiction to decide the commissioners' declaratory judgment claims and that this jurisdictional defect cannot be remedied.  The court finds that it is unnecessary to determine whether the boards of elections for every county subject to the directive are interested and necessary parties to a declaratory judgment regarding the lawfulness of the secretary's directive.

### C.  Mootness

{¶ 69} 39.  The secretary further argues that the issues raised by the commissioners have been rendered moot because of the UCBOE's compliance with the directive.

{¶ 70} 40.  Because the other two significant procedural defects identified by the secretary preclude this court from addressing the merits of the commissioners' claims, the court declines to address the mootness argument raised by the secretary.

### IV.  Conclusion

{¶ 71} For the foregoing reasons, the court concludes that the commissioners lack standing to prosecute these claims.  The court further concludes that even if the commissioners had standing to prosecute these claims, the court lacks

---

**14.** Assuming again that the commissioners are correct that the directive implicates R.C. 3506.02.

jurisdiction to adjudicate the declaratory judgment claims due to the commissioners' failure to join the UCBOE as a party. As a result, this court lacks the authority to consider whether the directive violates state and federal law, and the court must refrain from issuing an advisory ruling regarding the lawfulness of the directive.

Judgment accordingly.