# In the Iowa Supreme Court

No. 23–0661

Submitted September 6, 2024—Filed October 11, 2024

**Linn County Auditor Joel Miller,**

Appellant,

vs.

**Iowa Voter Registration Commission,**

Appellee.

Appeal from the Iowa District Court for Polk County, David M. Porter, judge.

A county auditor appeals a district court order denying his petition for review of an administrative decision dismissing his complaint under the Help Americans Vote Act (HAVA). **Reversed and Case Remanded.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

James C. Larew (argued) of Larew Law Office, Iowa City, for appellant.

Brenna Bird, Attorney General; Eric Wessan (argued), Solicitor General; and David M. Ranscht, Assistant Attorney General, for appellee.

**Mansfield, Justice.**

### I. Introduction.

Iowa has a shared system of responsibility for the conduct of elections. The Iowa Secretary of State, elected by all the citizens of Iowa, is the state commissioner of elections and the chief state election official. Iowa Code § 47.1(1), (3) (2020). The Secretary of State supervises the activities of the county commissioners of elections. *Id.* § 47.1(1). The Secretary of State is also the state registrar of voters and maintains the state's voter registration file. *Id.* § 47.7(1), (2)(*a*).

But Iowa's ninety-nine county auditors, each elected by the citizens of that county, are the county commissioners of elections. *Id.* § 47.2(1). They "conduct all elections within the county." *Id.* To accomplish this task, each county auditor must use the voter registration file maintained by the Secretary of State. *Id.* § 47.7(2)(*b*).

This case began when a county auditor filed an administrative complaint against the Secretary of State raising concerns about the security and integrity of the statewide voter registration file. The Secretary of State moved to dismiss the complaint without further proceedings, arguing that the file complied with the governing federal standards and that the county auditor's argument to the contrary amounted to "speculation." The administrative body agreed and dismissed the complaint. On petition for judicial review, the Secretary of State raised an additional argument that the county auditor lacked standing to pursue the matter in court. The district court denied relief, and the county auditor appealed.

We now reverse and remand. We conclude that a county auditor has standing to complain about threats to the statewide voter registration file

because of the position they occupy as a county commissioner of elections. On the merits, we conclude that the administrative body acted improperly in resolving factual questions without allowing an opportunity for the presentation of evidence.

## II. Facts and Procedural History.

**A. The Help America Vote Act (HAVA).** In the wake of the 2000 presidential election, Congress enacted the Help America Vote Act. Help America Vote Act (HAVA) of 2002, Pub. L. No. 107-252, 116 Stat. 1666 (codified as amended at 52 U.S.C. §§ 20901–21145). HAVA requires "each State, acting through the chief State election official, [to] implement . . . a single, uniform, official, centralized, interactive computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1)(A). HAVA also requires "adequate technological security measures to prevent the unauthorized access to the computerized list," *id.* § 21083(a)(3), a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote," *id.* § 21083(a)(4)(A), and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters," *id.* § 21083(a)(4)(B).

HAVA further provides that states receiving HAVA-related payments must establish and maintain "State-based administrative complaint procedures." *Id.* § 21112(a)(1). Under these procedures, "any person who believes that there is a violation of [certain HAVA provisions] (including a violation which has occurred, is occurring, or is about to occur) may file a complaint." *Id.* § 21112(a)(2)(B). And HAVA imposes procedural requirements on how the complaint shall be handled: "At the request of the complainant, there shall be a hearing on the record." *Id.* § 21112(a)(2)(E).

**B. The Linn County Auditor's Inquiry About Iowa's Computerized Voter Database.** In Iowa, the Secretary of State is the "chief state election official." Iowa Code § 47.1(3). On July 1, 2019, the Linn County Auditor, the chief election official for Linn County, submitted an open records request to the Secretary of State. The request noted that a year before, all county auditors had received a mailing from the Secretary of State's office stating that funding had been allocated and plans were underway to update the statewide computerized registered voter database used in Iowa, known as "I-Voters." The County Auditor noted that he had not heard anything since then. His request sought records relating to any progress that had occurred. It asked for a response within ten business days.

**C. The County Auditor's Administrative Complaint with the Secretary of State.** When that ten-day period lapsed without a response, the County Auditor filed an administrative complaint under HAVA with the Secretary of State. The complaint alleged that I-Voters "is very old and potentially vulnerable to cyber threats." It alleged that funding had been allocated but had not been used to update I-Voters. In the County Auditor's view, I-Voters did not comply with HAVA because it lacked both adequate technological security measures to prevent hacking and safeguards to ensure that eligible voters were not removed by mistake. Specifically, the County Auditor stated, "Until an improved or new database is in place, the Secretary of State's office is not complying with HAVA legislation." The County Auditor also asserted that under Iowa law, he is "the custodian of Linn County voter registrations" and "has a cause of action to protect those records."

**D. Proceedings on the Administrative Complaint.** Because the complaint named the Secretary of State as respondent, he forwarded it to the

Iowa Voter Registration Commission (VRC) for hearing and resolution. *See* Iowa Admin. Code r. 721—25.7(2) (stating that where the secretary of state is a respondent, the hearing officer for HAVA complaints shall be the VRC excluding the secretary of state or their designee); Iowa Code § 47.8(5).[1] Thereafter, the VRC—minus the Secretary of State's representative—served as the hearing officer. *See* Iowa Admin. Code r. 721—25.7(2); Iowa Code § 47.8(5). The VRC scheduled a hearing for December 2019.

Before the hearing, the Secretary of State moved to dismiss the complaint. He conceded that at the motion to dismiss stage, the VRC should accept "the well-pleaded facts" of the complaint. Yet he maintained that the complaint failed to state a claim because it did not allege a specific violation of HAVA and rested on "speculation." In the body of his six-page motion, which could be characterized as a "speaking motion," the Secretary of State discussed some I-Voter's security precautions that were already in place. He added that the County Auditor had failed to give any example of an actual security threat.

The County Auditor resisted. He agreed that at the motion to dismiss stage, all factual allegations were accepted as true. He attached a number of articles, news releases, and letters relating to cybersecurity, I-Voters, and concerns about individuals with prior felony convictions not being able to vote in Iowa despite their civil rights having been restored. The County Auditor stated that he intended to present facts "to support the allegations in the complaint" and "should not be foreclosed from doing so through a summary dismissal." In reply, the Secretary highlighted that his administrative rules require "a clear and

---

[1]Generally, the VRC consists of four persons: the Secretary of State or their designee, the state chairpersons of the two political parties whose presidential or gubernatorial candidates (as the case may be) received the most votes in the last general election, and a county auditor or their employee appointed by the president of the Iowa state association of county auditors. *See* Iowa Code § 47.8(1)(*a*).

concise description of the alleged violation . . . sufficiently detailed to apprise both the respondent and the presiding officer of the nature of the alleged violation." Iowa Admin. Code r. 721—25.2.

A one-hour hearing took place on December 30 limited to the Secretary of State's motion to dismiss. Counsel for the Secretary of State, counsel for the County Auditor, and the County Auditor himself presented argument. Each of them answered questions from the members of the VRC. For example, in response to questions from the VRC, both the Secretary of State's counsel and the County Auditor acknowledged that they were not personally aware of any past security breach of I-Voters. However, no one was under oath, no testimony was taken, and no exhibits were received. The VRC chair characterized the December 30 session as an "oral argument."

Following that hearing, the VRC accepted post-hearing briefs and reconvened by conference call in the presence of the parties on January 17, 2020. At that time, the VRC voted 2–1 to dismiss the complaint. During this hearing, the VRC members stated their respective positions publicly. A member who voted to grant dismissal said, "I still believe that the Secretary of State's office is providing adequate security measures for I-Voters." Another member who voted to grant dismissal stated, "At this point, I don't think there's been sufficient factual information that would lead me to think that this complaint should move forward." The member who dissented from dismissal asked, "Why not have a bigger hearing about what's going on here?" The VRC's ensuing written ruling said that "[t]he majority of the VRC Commissioners believe that 'adequate technological security measures' do exist" and that the County Auditor had only provided "speculation" to the contrary.

**E. The County Auditor's Petition for Judicial Review.** The County Auditor thereupon sought judicial review in the Polk County District Court pursuant to Iowa Code section 17A.19. His petition alleged that he had been "aggrieved and adversely affected by agency action" and that the VRC had erred in granting the Secretary of State's motion to dismiss.

Both sides submitted legal briefs to the court. On the question of standing, the County Auditor insisted that as the county commissioner of elections for Linn County, he "is responsible for the voter registration records of the county." *See* Iowa Code § 48A.35. Therefore, he contended that "he has a special personal and legal interest, distinguishable from the general public, in the [VRC]'s decision dismissing his Complaint." On the merits, the County Auditor urged that the VRC had violated both HAVA and Iowa motion-to-dismiss standards when it rejected the administrative complaint without holding an evidentiary hearing or giving the County Auditor an opportunity to prove up his allegations.

In its responsive brief, the Secretary of State urged that merely filing an administrative complaint does not confer standing to seek judicial review if that administrative complaint is denied. The Secretary of State insisted that the County Auditor was asserting "[a]n interest in merely ensuring compliance with the law," which is "not sufficient for standing." Turning to the merits, the Secretary of State disputed that HAVA requires evidentiary hearings on all complaints, he denied that the County Auditor had pleaded sufficient facts to warrant further proceedings, and he argued that the only "facts" that the VRC had found in its ruling were matters subject to judicial notice.

A hearing took place in the district court in July 2020, but no decision was rendered at that time. In February 2021, the Secretary of State moved to dismiss the County Auditor's judicial review petition as moot, noting that the November

2020 general election had already taken place. The County Auditor resisted, and the district court, after a hearing, denied the motion to dismiss.

The underlying petition for judicial review remained pending for some time. Ultimately, in March 2023, the district court dismissed it. In a written order, the district court reasoned that the County Auditor "had not demonstrated an injury in fact."

The County Auditor appealed, and we retained the appeal.

### III. Standard of Review.

"We review a decision by the district court to dismiss a case based on the lack of standing for errors at law." *Dickey v. Iowa Ethics & Campaign Disclosure Bd.*, 943 N.W.2d 34, 37 (Iowa 2020) (quoting *Hawkeye Foodservice Distrib., Inc., v. Iowa Educators Corp.*, 812 N.W.2d 600, 604 (Iowa 2012)).

"We review a ruling on a motion to dismiss for the correction of errors at law." *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 194 (Iowa 2007) (quoting *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 442 (Iowa 2002)). "A dismissal will be affirmed 'only if the petition shows no right of recovery under any state of the facts.' " *Id.* (quoting *Comes*, 646 N.W.2d at 442).

### IV. Does the County Auditor Have Standing?

The County Auditor's administrative complaint charged that the I-Voter database maintained by the Secretary of State did not comply with HAVA because it lacked safeguards to prevent hacking and to protect eligible voters from being improperly removed. Following the dismissal of that administrative complaint, the County Auditor petitioned for judicial review, asking that the dismissal be overturned. The threshold question is whether the County Auditor has standing to proceed in the Iowa courts.

**A. Standing Principles Under Iowa Code Section 17A.19.** Iowa Code section 17A.19(1) requires that the petitioner for judicial review be "aggrieved or adversely affected by any final agency action." We have explained that this means "the complaining party must (1) have a specific, personal, and legal interest in the litigation; and (2) the specific interest must be adversely affected by the agency action in question." *Dickey*, 943 N.W.2d at 37–38 (quoting *Medco Behav. Care Corp. of Iowa v. Iowa Dep't of Hum. Servs.*, 553 N.W.2d 556, 562 (Iowa 1996)).

"Notably, 'a person may be a proper party to agency proceedings and not have standing to obtain judicial review.' " *Id.* at 38 (quoting *Richards v. Iowa Dep't of Revenue & Fin.*, 454 N.W.2d 573, 575 (Iowa 1990)); *see also Gluba v. State Objection Panel*, ___ N.W.3d ___, ___, 2024 WL 4154772, at *3 (Iowa Sept. 11, 2024) (per curiam) (reiterating this point). Also, "[a] 'general interest' in the proper enforcement of the law cannot support standing to obtain judicial review." *Dickey*, 943 N.W.2d at 38 (quoting *Richards*, 454 N.W.2d at 575).

In *Dickey v. Iowa Ethics & Campaign Disclosure Board*, for example, the petitioner had sought an official determination from the Iowa Ethics and Campaign Disclosure Board that the Governor's campaign had underreported the fair market value of a private plane trip provided by a campaign donor. *Id.* at 36. The board disagreed with the petitioner that there had been underreporting and dismissed the administrative complaint. *Id.* at 36–37. The petitioner then sought judicial review under chapter 17A. *Id.* at 37. We held (as had the district court) that the petitioner lacked standing. *Id.* at 37–40. The petitioner did not claim that *he* lacked any relevant information about the plane trip. *Id.* at 38–39. He "contend[ed] only that a higher value of the flights should have been reported

than actually was reported." *Id.* at 38. We summarized: "Courts exist to hear claims brought by injured parties; [petitioner] is not injured." *Id.* at 40.

The Secretary of State contends that *Dickey* controls this case because the County Auditor's complaint is also "informational." That is, the County Auditor merely seeks to know more about technological updates to I-Voters.

We see the matter otherwise. Unlike the petitioner in *Dickey*, the County Auditor does not already have the information he is seeking. Also, the complaint raises more than missing information. The County Auditor contends, based on the admittedly limited information available to him, that I-Voters lacks HAVA-compliant safeguards against hacking and the removal of eligible voters.

Nonetheless, *Dickey* and its predecessors certainly stand for the proposition that the County Auditor needs a protected legal interest and an injury to that interest in order to have standing. An abstract desire to see HAVA properly enforced is not enough.

A recent federal district court decision illustrates this point. In *Wisconsin Voter Alliance v. Millis*, the plaintiffs filed two administrative complaints with the Wisconsin Elections Commission (WEC) asserting HAVA violations. ___ F. Supp. 3d ___, ___, 2024 WL 1092092, at *2 (E.D. Wis. Mar. 13, 2024). One had to do with a Wisconsin law allowing the sharing of Wisconsin voter registration data with an outside entity; the other concerned WEC's guidance allowing overseas absentee ballots to be received without certain voter identity and eligibility verification. *Id.* The WEC declined to consider either complaint and told the plaintiffs to submit these matters to the local prosecutor if they wanted to. *Id.* at *3. The plaintiffs instead went to federal court, alleging that "the WEC's conduct related to the 2022 and 2023 administrative complaints violated Plaintiffs' right to an administrative complaint process, a hearing on the record,

and an appropriate remedy under 52 U.S.C. § 21112." *Id.* They also alleged that Wisconsin law violated HAVA "because it does not require an independent administrative law judge to hear, adjudicate, and provide remedies regarding HAVA administrative complaints against state election officials, including the WEC." *Id.*

The federal district court held that the plaintiffs lacked standing. *Id.* at *4–5. It emphasized that the plaintiffs had only asserted the following injuries for standing purposes: (1) denial of statutory administrative rights under HAVA, and (2) the forced expense of going to court due to Wisconsin's failure to implement HAVA administrative rights. *Id.* at *4. The court reasoned that these injuries did not suffice: merely alleging a violation of a statutory procedural right or the need to pay a filing fee did not establish an injury in fact. *Id.* The court added that it "might be able to construct an argument for standing," while observing that "it would be improper for [the court] to do so." *Id.* at *5.

**B. Does the County Auditor Have Standing Under HAVA?** The County Auditor first argues that HAVA itself confers standing. As already noted, HAVA requires states receiving HAVA funds to establish an administrative process for receiving and acting on complaints. The procedures "shall be uniform and nondiscriminatory." 52 U.S.C. § 21112(a)(2)(A). They shall allow "any person who believes that there is a violation" to file a complaint. *Id.* § 21112(a)(2)(B). The complainant must be afforded "a hearing on the record." *Id.* § 21112(a)(2)(E). And if a violation is found, the state must "provide the appropriate remedy." *Id.* § 21112(a)(2)(F).

The County Auditor argues that these provisions also require the state to make judicial review within its courts available to any disappointed HAVA

complainant. That is, HAVA requires states to bend their standing rules, if necessary, to provide a judicial forum for hearing HAVA appeals.

We are not persuaded. Nothing in section 21112 speaks of access to the state courts, as distinguished from access to an administrative process. Also, given that Congress cannot force a federal court to hear a dispute when there has been no injury in fact, *see, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), it would be incongruous for us to conclude that Congress has forced—and can force—a state court to hear such a dispute.

Therefore, we conclude that 52 U.S.C. section 21112 does not by itself give the County Auditor standing.

**C. Does the County Auditor Have Standing as a Public Official Responsible for the Conduct of Elections?** We next consider the County Auditor's argument that his status as commissioner of elections for Linn County gives him standing to sue over threats to the integrity of the voter database used in that county.

Serving as a public official does not automatically confer special status for standing purposes. For example, legislators don't have standing to appear as parties in a court case simply because they disagree with the interpretation of a law. *Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 872–73 (Iowa 2005) (holding that legislators did not have standing to challenge a decree dissolving a same-sex civil union because they disagreed with the district court's statutory interpretation). Rather, the general rule is that a legislator may sue only to challenge misconduct or illegality within the legislative process itself. *Id.* at 873.

The standing of a public official may expand or contract depending on the constitutional and legislative landscape. For example, a county attorney—because they represent the state and because counties are creatures

of state law—generally lacks standing to challenge the constitutionality of a state law. *See In re A.W.*, 741 N.W.2d 793, 805 (Iowa 2007) ("The county attorney's authority to act on behalf of either the county or the State is derived from the legislature, and he therefore may not challenge the constitutionality of legislative acts in court while representing the interests of the State."), *superseded by statute as stated in In re C.Z.*, 956 N.W.2d 113, 120 (Iowa 2021); *accord Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 272 (Iowa 1983) ("[A] county has no interest in defeating a statute duly enacted by the legislature."). On the other hand, a county attorney is specially authorized to bring a mandamus action in the name of the state "when the public interest is concerned." *State ex rel. Johnson v. Allen*, 569 N.W.2d 143, 145 (Iowa 1997) (quoting Iowa Code § 661.8).

Public entities and public officers may have standing to protect their own institutional interests. Thus, a city had standing to seek review of a declaratory ruling of the Public Employment Relations Board under Iowa Code section 17A.19 because it was a public employer that "will be involved in future negotiations affected by the decision of the Board." *City of Des Moines v. Pub. Emp. Rels. Bd.*, 275 N.W.2d 753, 759 (Iowa 1979).[2]

We have also recognized that "[t]he standing rule should not bar a school district from access to the courts to obtain judicial determination of issues which we have held the superior agency cannot authoritatively determine." *Se. Warren Cmty. Sch. Dist. v. Dep't of Pub. Instruction*, 285 N.W.2d 173, 177 (Iowa 1979). In *Southeast Warren Community School District v. Department of Public Instruction*,

---

[2]Analogously, the United States Supreme Court has found that standing exists when "an institutional plaintiff [is] asserting an institutional injury." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 802 (2015) (holding that the Arizona legislature had standing to challenge an initiative that transferred redistricting authority from the legislature and vested it in a redistricting commission).

we held that a school district had standing under Iowa Code section 17A.19 to seek judicial review of a state agency ruling that it could not expel a special education student. *Id.* at 177–78. Similarly, in *Polk County v. Iowa State Appeal Board*, we held that a county could "challenge the nature and extent of the authority or procedures of a state agency under relevant or enabling legislation," 330 N.W.2d at 272, even though it did not have standing to raise the constitutionality of state laws or matters "entrusted by statute to the [state agency's] discretion," *id.* at 271–72.

Chapter 47 of the Iowa Code governs election commissioners. "The secretary of state is designated as the state commissioner of elections and shall supervise the activities of the county commissioners of elections." Iowa Code § 47.1(1). The secretary of state is also "the state registrar of voters, and shall regulate the preparation, preservation, and maintenance of voter registration records, [and] the preparation of precinct election registers for all elections administered by the commissioner of any county." *Id.* § 47.7(1). Mirroring the requirements of HAVA, chapter 47 requires the secretary of state to "implement . . . a single, uniform, official, centralized, interactive computerized statewide voter registration file defined, maintained, and administered at the state level." *Id.* § 47.7(2)(*a*). County commissioners are not allowed to "establish or maintain a voter registration system separate from the state voter registration system." *Id.* § 47.7(2)(*b*). County commissioners are, however, responsible for conducting elections within their own counties. *Id.* § 47.2(2)(*a*).

In light of all this, we think the County Auditor has standing to assert his claims that the Secretary of State's administration of the statewide I-Voters database may not comply with HAVA. The County Auditor has a significant interest—peculiar to his office—in the integrity of that database.

As noted, the County Auditor is responsible for elections in Linn County. *See* Iowa Code § 47.2(1). It is true that the Secretary of State may at his discretion "oversee" those activities. *Id.* § 49.2. Yet, the County Auditor conducts voter registration in his county, *id.* § 47.2(1), has the duty to determine that all voting equipment is operational and functioning properly in that county, *id.* § 49.127, must receive the canvass of votes from each precinct and remain on duty until that canvass is complete, *id.* § 50.11, and must report election results to the Secretary of State, *id.* § 50.15A. The County Auditor also must compile a list of provisional ballots "as soon as possible" and make that list available to the public. *Id.* § 50.20. The County Auditor may request an administrative recount when an equipment or programming error is suspected of affecting the outcome, or if counting errors are reported after the conclusion of a canvass in a precinct. *Id.* § 50.50(1). In addition, the County Auditor is in charge of processing absentee ballot requests. *Id.* § 53.2; *see also League of United Latin Am. Citizens of Iowa v. Pate*, 950 N.W.2d 204, 220 (Iowa 2020) (per curiam) (Oxley, J., dissenting).

Hacking or the erroneous removal of eligible voters from I-Voters could easily impair the County Auditor's ability to perform the foregoing tasks. Voting equipment would not work properly, the canvass and the reported election results would not be reliable, and eligible voters who had been denied the chance to vote would have to cast provisional ballots. Processing absentee ballot requests would be more problematic.

This case thus falls within the standing principle identified in *Southeast Warren* and *Polk County*. That is, a subordinate local entity with a specific, personal, and legal interest in a matter "may challenge the nature and extent of the authority or procedures of a state agency under relevant or enabling legislation." *Polk County*, 330 N.W.2d at 272. The Secretary of State's

interpretation of HAVA's database security provisions is not legally final, and the County Auditor has a concrete and special interest in adequate measures to assure the database is accurate and not tampered with. *Id.* We therefore conclude that the County Auditor has standing.[3]

## V. Are There Other Grounds to Uphold the VRC's Dismissal of the Administrative Complaint?

Having concluded that the County Auditor had standing, we now turn to whether other grounds exist to uphold the VRC's dismissal of the County Auditor's administrative complaint without receiving evidence. The Secretary of State offers several potential grounds. He argues: (1) a "hearing on the record" as required by HAVA does not have to be an evidentiary hearing, (2) the Secretary of State's rules allow for a decision to be rendered "based upon written submissions unless the complainant or respondent requests a hearing on the record or the presiding officer determines that an evidentiary hearing will assist in resolution of outstanding factual disputes" (Iowa Admin. Code r. 721—25.8(1)), and (3) the complaint was deficient from the outset because it was not notarized or sworn as required by HAVA. We now consider these arguments.

**A. Was the Administrative Hearing on the Record?** At the outset, we agree with the Secretary of State that a hearing "on the record" doesn't

---

[3]The facts of this case can be contrasted with *Union County Commissioners v. Brunner*, where an Ohio court found that county commissioners lacked standing to challenge a legal directive from the Ohio Secretary of State that counties using direct recording electronic voting systems must make optical scan ballots available to any voters who request them. 889 N.E.2d 589, 660–61 (Ohio Ct. Com. Pl. 2008). Essentially, the court concluded that the county board of elections, which had not joined the lawsuit and had gone along with the secretary of state's directive, had the primary local responsibility for adopting voting equipment for use in elections. *Id.* at 597–98. It also concluded that the county commissioners had not shown that the county would incur a financial burden. *Id.* at 598–600. The present case has not been brought by county supervisors, but by the county official directly responsible for the conduct of elections in Linn County.

necessarily have to be an evidentiary hearing. Usually, the phrase just means that the hearing has to be recorded and what transpired has to become part of the official record. "Typically, when we think of court actions that are 'on the record,' we have in mind events that become part of the official court record. This is to be contrasted with matters that are 'off the record.' " *State v. Jones*, 817 N.W.2d 11, 25 (Iowa 2012) (Mansfield, J., specially concurring) (citation omitted). When a trial judge says to the lawyers, "Let's put this on the record," the judge means, "Let's have a record made of what each of us is saying." The administrative hearing before the VRC was "on the record" in that sense: we have an audio recording of it.

Yet, the Secretary of State's contention begs the question of whether the County Auditor's complaint should have been dismissed without an *evidentiary* hearing. The mere fact that the administrative proceedings took place "on the record" isn't sufficient ground by itself for affirmance.

**B. Was the Administrative Hearing "Based Upon Written Submissions"?** Moving to the Secretary of State's second contention, we agree that an administrative rule of that office allows for a decision on the merits to be rendered upon written submissions in certain circumstances. *See* Iowa Admin. Code r. 721—25.8(1). But the VRC didn't invoke that procedure here. Instead, it issued a notice of hearing for December 2019 stating that both parties would be afforded the opportunity to "produce evidence," "cross-examine witnesses," and "respond to any documents introduced at hearing." In other words, the VRC treated the matter as warranting a full-blown hearing.

At this point, the Secretary of State filed a motion to dismiss. Therein, the Secretary maintained that the County Auditor had failed to state a claim under general Iowa pleading standards. *See, e.g., Ostrem v. Prideco Secure Loan Fund,*

*LP*, 841 N.W.2d 882, 891 (Iowa 2014); *Hawkeye Foodservice*, 812 N.W.2d at 604; *Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 8 (Iowa 2006). The County Auditor resisted—similarly citing caselaw under the Iowa Rules of Civil Procedure. *See, e.g.*, *Rieff v. Evans*, 630 N.W.2d 278, 284 (Iowa 2001) (en banc); *Smith v. Smith*, 513 N.W.2d 728, 730 (Iowa 1994). The County Auditor added that he "intend[ed] to present facts at hearing to support the allegations in the complaint" and "should not be foreclosed from doing so through a summary dismissal." The VRC then announced it would hear the motion to dismiss *first* and converted the December 2019 hearing into a hearing on the motion to dismiss *only*.

So, what occurred on December 30, 2019, was not a merits hearing "based upon written submissions" but a hearing on the legal sufficiency of the County Auditor's claims.[4] Therefore, we do not believe that the VRC's ruling can be upheld on the basis that it was an exercise of its written-submission authority.

**C. Should We Affirm Dismissal Because the Original Complaint Was Not "Sworn" and "Notarized"?** Nor are we persuaded to uphold the VRC's dismissal order based on the County Auditor's failure to sign his original administrative complaint under oath. *See* 52 U.S.C. § 21112(a)(2)(C) (requiring complaints to be "notarized" and "signed and sworn"); Iowa Admin. Code r. 721—25.2 (same). The Secretary of State did not raise this deficiency as a ground for dismissal before either the VRC or the district court. *See King v. State*,

---

[4]Although the County Auditor submitted some written materials—primarily news articles and news releases—we do not believe he was on notice that he had to present all his evidence before the merits hearing was actually held. The exhibits were part of the County Auditor's "answer" to the motion to dismiss which was filed to contest some of the unverified statements in the Secretary of State's "speaking" motion to dismiss. But at the same time, the County Auditor was asking for the opportunity "to present facts at hearing to support the allegations in the complaint." The Iowa Administrative Procedure Act states that "[o]pportunity shall be afforded all parties to respond and present evidence and argument on all issues involved and to be represented by counsel at their own expense." Iowa Code § 17A.12(4).

818 N.W.2d 1, 12 (Iowa 2012) (discussing our ability to affirm based on a ground raised below). Four years have elapsed since the County Auditor filed his administrative complaint; this objection is only now being raised for the first time in the appellee's brief. We decline to consider it for the first time in the present appeal. *See DeVoss v. State*, 648 N.W.2d 56, 60–63 (Iowa 2002) (describing the general rule and the exception to this rule allowing evidentiary rulings to be affirmed on grounds not raised in the trial court).

**D. Has the County Auditor Stated a Claim?** The foregoing discussion leaves open the propriety of the VRC's dismissal of the administrative complaint based on pleadings and argument alone. The Secretary of State took the position, both before the VRC and the district court, that the administrative complaint had failed to state such a claim. In its order of dismissal, the VRC agreed with the Secretary of State, reasoning,

> The majority of the VRC Commissioners believe that "adequate technological security measures" [as required by HAVA] do exist. Regardless of the technical definitions of "adequate," this is not a difficult standard to achieve. The parties could not identify an instance of a successful computer hack of I-Voters. To simply assert that a hack may happen in the future and thus a violation of HAVA "is about to occur" is not sufficient. Any computer system potentially can be hacked. In resolving this matter, the opinion of the majority of the VRC Commissioners is that this Complaint leads to speculation as opposed to fact.
>
> . . . .
>
> . . . [A] majority of the VRC Commissioners determined based on the language of the laws involved and the wording of the Complaint, that even if all facts were true there would not be a preponderance of evidence resulting in a violation of Title III of HAVA. Therefore, by a 2–1 vote the Motion to Dismiss was granted at the [January 2020] hearing.

When the case moved on to the district court, the Secretary of State reiterated that the administrative complaint was insufficient as a matter of law,

while the County Auditor disagreed. Although the Secretary of State does not argue legal insufficiency in his *appellate* briefing, the parties debated the subject during oral argument before our court. We may consider a potential ground for affirmance that was briefed and argued below. *See King*, 818 N.W.2d at 11–12 (explaining that we have discretion to affirm on a ground raised and argued below even if the appellee's brief did not argue it); *see also Konchar v. Pins*, 989 N.W.2d 150, 161 n.1 (Iowa 2023) (same). Here, no factual development is needed, and it would not be an effective use of anyone's resources to await a subsequent appeal.

We need not decide today whether regular notice pleading standards apply to HAVA-related administrative complaints filed with the Secretary of State. Both sides assumed below that traditional notice pleading standards governed; they cited to and relied upon the same body of rule 1.421(1)(*f*) caselaw. True, the Secretary of State's rule relating to HAVA complaints provides, "The complaint must identify the complainant by name and mailing address and include a clear and concise description of the alleged violation that is sufficiently detailed to apprise both the respondent and the presiding officer of the nature of the alleged violation." (Quoting Iowa Admin. Code r. 721—25.2.) The Secretary of State quoted this rule but did not argue that it mandated a different approach than followed by our cases under rule 1.421(1)(*f*). He mostly cited and relied on those cases.

We note that HAVA is broad and authorizes complaints to be brought over any violation, "including a violation which has occurred, is occurring, or is about to occur." 52 U.S.C. § 21112(a)(2)(b); Iowa Admin. Code r. 721—25.2. Here, the County Auditor alleged that I-Voters is "very old and potentially vulnerable to cyber threats." He alleged that a person was hired around January 2018 to lead the creation of a new I-Voters system but ceased employment in June 2019. He

alleged that no work had occurred on updating I-Voters in the year since the legislature appropriated money for that purpose. He alleged that "the current I-Voters system does not meet [HAVA's] standards" for "adequate technological security measures to prevent . . . unauthorized access," *see* 52 U.S.C. § 21083(a)(3), or "[s]afeguards to ensure that eligible voters are not removed in error," *see id.* § 21083(a)(4)(B). While these allegations are rather conclusory, we believe that they would be enough to survive a motion to dismiss under Iowa Rule of Civil Procedure 1.421(1)(*f*) standards. *See Terrace Hill Soc'y Found. v. Terrace Hill Comm'n*, 6 N.W.3d 290, 292–93 (Iowa 2024) ("In reviewing a ruling on a motion to dismiss, we accept as true the factual allegations contained in the pleading."); *Belin v. Reynolds*, 989 N.W.2d 166, 170 (Iowa 2023) ("At the motion-to-dismiss stage, we accept the plaintiffs' factual allegations as true and we view them in the light most favorable to the plaintiffs.").

Furthermore, in granting the motion, the VRC appears to have resolved issues of fact. The December 2019 hearing included considerable discussion and debate about aspects of I-Voters' security. The VRC's subsequent written ruling followed the theme and drift of that discussion. It noted that the County Auditor had not identified an example of a successful hack. It commented that the complaint "leads to speculation as opposed to fact." It took judicial notice of the fact that funding allocated by the legislature is being utilized. And it took judicial notice that the Secretary of State has "publicly announced cyber security enhancements." We are not convinced that the relevant aspects of these matters are appropriate for judicial notice. *See* Iowa R. Evid. 5.201(*b*) (limiting judicial notice to facts that are "generally known within the trial court's territorial jurisdiction" or "[c]an be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also* Iowa Code § 17A.12(8)

("Findings of fact shall be based solely on the evidence in the record and on matters officially noticed in the record.").[5]

Thus, apart from the question of whether the County Auditor's administrative complaint met the applicable pleading standard, we believe that the VRC should not have decided factual issues at the motion to dismiss stage. *See* Iowa Code § 17A.12(8) ("Findings of fact shall be based solely on the evidence in the record and on matters officially noticed in the record."); *see also Shams v. Hassan*, 829 N.W.2d 848, 853 (Iowa 2013) (contrasting a motion to dismiss for lack of personal jurisdiction, where the court must make factual findings, with other pretrial motions). We note that the VRC canceled the previously scheduled evidentiary hearing and substituted a hearing on the motion to dismiss. When the County Auditor asked for the motion to dismiss to be denied, he spoke of his intent to present evidence *after* the motion was denied. We do not believe that factfinding hearing at the December 30, 2019 was authorized or contemplated. Accordingly, in our view, this matter should be remanded by the district court to the VRC for further proceedings on the County Auditor's complaint.

## VI. Conclusion.

For these reasons, we conclude that the district court's order dismissing the County Auditor's petition for judicial review should be reversed. We remand for further proceedings consistent with this opinion.

**Reversed and Case Remanded.**

---

[5]What matters, of course, is not what the Secretary of State may have announced but what steps were actually being taken with respect to I-Voters' security and integrity. We are not convinced that the latter is an appropriate topic for judicial notice.